WOBOSEL, Respondent, vs. LEE, Administrator, imp., Appellant.

*June 1—October 11, 1932.*

For the appellant there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison and *Kittell, Jaseph, Young & Everson* of Green Bay, and oral argument by *Harold M. Wilkie.*

*Edward M. Goemans* of De Pere, for the respondent.

The following opinion was filed June 20, 1932:

FRITZ, J.   The collision on a curve in a concrete highway occurred at the bottom of a hill 900 feet long, which had a grade that averaged 2.41 per cent., and was 5.12 per cent. at its steepest point, and all of which was coated with ice that had formed on the night of the collision.   Plaintiff was a guest in defendant McLaughlin's automobile, which was proceeding southward around a curve, and was about to climb the hill, when it was struck by Lee's automobile, which, proceeding northward, had slid down the entire hill beyond Lee's control.   As Lee's automobile started downward at the top of the hill, it began sliding and swaying from his right side of the concrete roadway to the left side, and during the course of its 900 foot descent its rear end swung completely around so that it faced in the opposite direction by the time the collision occurred.   As it is established that skidding may occur, and when it does occur may likewise continue for a considerable space and time, without fault or negligence on the part of the driver (*Linden v. Miller,* 172 Wis. 20, 177 N. W. 909), it was rightly considered necessary on the trial, by the court and counsel, for plaintiff to establish negligence in some respect on the part of Lee in operating his automobile, in order to hold him liable for the consequences of the collision.   In a special verdict the jury found that at or immediately prior to its skidding Lee negligently drove his car at an unreasonable speed, and that as a result thereof the collision occurred.

On the trial, on motions after verdict, and on this appeal, it is the contention of Lee's counsel that there was no competent evidence to sustain that finding of unreasonable speed.   There was no evidence regarding Lee's actual rate of speed as he reached the place where he began to skid, excepting mere conclusions testified to by Francis Goemans, whose observations had been of but the most casual character.   Although objections to his testimony and motions

to strike it out on the ground of incompetency had been duly made by Lee's counsel, they were all overruled. He testified that he had had considerable experience in riding in an automobile as a driver as well as merely a passenger, including Lee's automobile, and also in making observations as to the speed at which he was traveling. His observations had included the vibrations and sensations experienced in automobiles when propelled at different rates of speed. He testified, "The faster your motor goes, the more you can hear your motor—you go past an object faster," and that he could tell when a car was being speeded up. He testified further:

"I should be able to tell pretty close when I get into a car and shut my eyes how fast a car was going on a concrete pavement. I think I could tell the speed when sitting in the back seat of a car . . . which is being driven on a concrete road . . . between fifteen and thirty miles an hour. I might miss it by five or six miles. I think I could tell within ten miles. I never made a test with a speedometer except to . . . check my accuracy. For instance, I would be driving my car and come into a city where the speed limit was so much. . . . I have never checked my accuracy under the conditions such as here."

In answer to the question, "What could you tell as to the speed of the car?" he said, "I judge we were going about thirty miles an hour." Likewise, in answer to the question, "Now, is it your judgment that the speed that you testified to of approximately thirty miles an hour was the speed that Edward Lee was driving at the time his automobile commenced to skid?" he said, "That is my judgment."

The collision occurred shortly after midnight on January 1, 1930. Goemans, together with another man and three women, as Lee's guests, had proceeded but a few miles before the collision occurred. Shortly before entering Lee's automobile Goemans had purchased a bottle of gin. He had three drinks and the bottle was on the floor of the automobile at the time of the collision. He and three others sat

on the rear seat of the automobile, which was an inclosed car, but he could not remember whether he sat at the side or in the center of that seat. He did not remember distinctly whether or not there was any moonlight that night. He did remember passing a roadhouse called the "Country Club," a state reformatory, farms and houses, and everything with which he was familiar in going down the road, but he was not paying particular attention to any objects for the purpose of gauging the speed. He did not look at the speedometer, and admitted that it was difficult to tell exactly the speed of a car at night when he was not paying particular attention. In a written statement which he had signed shortly after the accident, and which was received in evidence, he had said:

"When we left the country club I was talking to Miss Carney. I am not sure of the speed; but I know we were not going excessive; yet we were going over fifteen miles an hour. I could not see if Lee was watching the road or driving with both hands. I wouldn't say whether Lee applied any brakes or not. Neither can I say that I saw the car that struck our car. I remember faintly that our car skidded and that is the last thing I remember."

When examined as to that statement, he testified on the trial:

"At that time I couldn't exactly state the speed. . . . I could not say now that I am sure. . . . It could have been somewhere between fifteen and thirty miles. I am not sure it was thirty miles an hour. I am not positively sure of what the speed was. I did not even see the lights of McLaughlin's car. . . . I did not make any objection to the manner in which Lee drove the car. I don't know whether I was satisfied or not with the way in which the Lee car was being operated; it wasn't my car."

It is apparent that the mere casual observations to which Goemans testified were not made with any design, or under such circumstances, as to enable him to gauge the speed of the automobile. It does not appear that there was anything

at the time about the speed or the vibration or noise of the automobile to attract his attention to the rate at which it was being propelled. Goemans' location in the automobile and his inattention and unconcern regarding Lee's speed at the time when Goemans made such observations of objects along the highway as he testified to, but in relation to which he had not made any estimate as to Lee's speed as the objects were being passed, were all merely of such nature as to afford no proper basis for the conclusions as to speed to which he testified on the trial. None of those observations made any impression upon him at the time so as to cause him to pay any particular attention, or in any manner then to concern himself in relation to the operation of the automobile. Although he was one of the passengers in Lee's automobile, the existing facts and circumstances manifestly were such that he was evidently at the time as indifferent to its operation as if he had been but a disinterested bystander. Under the circumstances, Goemans' testimony as to speed was of no more probative value than the testimony of the witness Bradley in *Olson v. Hermansen,* 196 Wis. 614, 618, 220 N. W. 203. It was not sufficient to support the jury's finding as to unreasonable speed, and consequently, in the absence of any other proof to sustain that finding, the defendant Lee was entitled to the dismissal of the complaint.

*By the Court.*—Judgment reversed as to the defendant M. E. Lee, administrator of the estate of Edward Lee, deceased, and cause remanded with directions to enter judgment dismissing the complaint as to that defendant.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.