ZEINEMANN and another, Plaintiffs and Respondents, vs. GASSER and another, Defendants and Appellants : FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Interpleaded Defendant and Respondent.

*September 9—October 14, 1947.*

240

For the appellants there was a brief by *Buchen, Currie, Federer, Grote & Hesslink* of Sheboygan, and oral argument by *T. A. Grote* and *Jacob F. Federer*.

For the respondents there was a brief by *Bassuener, Humke, Poole & Axel* of Sheboygan for Dorothy Zeinemann, and by *Gruhle, Fessler & Wilkus* of Sheboygan for Robert Zeinemann and Farmers Mutual Automobile Insurance Company, and oral argument by *John M. Poole* and *Jacob A. Fessler*.

BARLOW, J. Defendants contend the evidence does not sustain the findings of the jury, (1) that defendant Gasser was negligent as to management and control; (2) that the negligence as to management and control was a cause of the collision; (3) that defendant Gasser was negligent as to speed; (4) that plaintiff Robert Zeinemann was free of negligence. Defendants also contend the trial court was not warranted in changing the answer of the jury making speed a cause of the collision. Claim is also made that damages awarded by the jury to Dorothy Zeinemann are excessive. It is necessary to examine the facts to determine the questions presented.

The collision occurred about 2 a. m., March 1, 1946. Plaintiff Robert Zeinemann was driving his Ford automobile in an easterly direction on State Trunk Highway 28 in the village of Kohler, Sheboygan county, Wisconsin, with his wife, plaintiff Dorothy Zeinemann, a passenger riding in the front seat. Defendant Peter Gasser was driving his Chrysler automobile in a westerly direction and intended to turn right or north on High street, to go to the American Club, which is situated on High street, where he resided. The maximum speed allowed in the neighborhood where the accident occurred is thirty-five miles per hour. The statement of facts in appellants' brief well describes the area where the collision occurred and the condition of the highway as follows:

"High street intersects Highway 28 at right angles from the north. The first street east of High street is Washington square which intersects Highway 28 at right angles from the south at a point about two hundred feet east of High street. East of Washington square is a dip in the road. Washington square is the highest point in the highway. The highway from that point slopes both to the west and to the east. From Washington square to the bottom of the dip to the east is approximately eight hundred thirty feet. From the bottom of the dip east to the point of collision is approximately four hundred twenty feet. East of that dip there are guard posts to the south of the highway. The collision occurred immediately east of the dip at between the third and fourth guard posts counting from the west. Approximately five hundred fifty feet east from the point of collision is a driveway leading to a house on the south side of the road. This driveway is about two thousand feet east from High street. Approximately five hundred feet east of this driveway on the north side of the road is the east entrance of the Kohler company plant. The concrete pavement is twenty feet wide.

"From the point of the accident to the west the highway is straight. Looking east from the point of the accident the highway curves slightly to the south. From the point of the

accident to the home to the east, a distance of approximately five hundred fifty feet, the highway curves about twenty-four feet to the south.

"The bottom of the dip afore-mentioned is about seven and one-half feet below the highway at the point of the accident. A person sitting in an automobile at the bottom of this dip looking east could see an approaching automobile coming from the east about eight hundred fifty feet.

"The highway at the point of collision, and to a distance of at least seventy-five feet east of the point of collision, slopes from the north to the south so that the north edge of the concrete highway is four and one-half inches higher than the south line of the concrete roadway.    The center line is higher than the south line by three and one-half inches, and the north line is about one inch above the center line.

"The highway was slippery that night.    It was thawing and there was water on the ice.    When the Gasser automobile was approximately one hundred feet east of the point of collision, the defendant Gasser lost control of his car, caused by skidding, and the rear end of the car slid to the south and the car turned sideways onto the south lane of the highway, the front end facing north.    The car continued skidding sideways to the point of impact."

Additional material facts are : The headlights on both cars were lighted.    Both parties were driving conventional gear-driven cars with shifting levers.    When defendant Gasser was about seven hundred fifty feet east of the point of the accident he disengaged his motor by depressing his clutch, permitting his car to coast.    He continued in this manner until the collision occurred, his car starting to skid to the south side of the highway when he was about one hundred feet from the point of collision.    Defendant Robert Zeinemann was coming out of the dip and about two hundred fifty feet from the Gasser car when he saw the lights of the Gasser car wavering.    Zeinemann had been traveling fifteen to twenty miles an hour.    He

took his foot off the accelerator and pulled over to the right so that his right wheels were about two feet off the concrete to the south.   Zeinemann had chains on his car, but did not apply his brakes.   The left side of the Gasser car and the front part of the Zeinemann automobile came together at the impact. Both cars were badly damaged and plaintiffs sustained personal injuries.

Appellants admit that Gasser's automobile was on the south or wrong side of the highway at the time of the collision, which creates a *prima facia* case of negligence unless it is shown that his presence there was beyond his control.   See *Booth v. Frankenstein* (1932), 209 Wis. 362, 245 N. W. 191; *Hamilton v. Reinemann* (1940), 233 Wis. 572, 290 N. W. 194. The explanation offered by defendant Gasser for the position of his car at the time of the collision is that the highway was wet, icy, and slippery, and the traveled portion of the highway sloped from the north to the south, all of which caused his automobile to skid without any fault on his part.   Our court has held that skidding may occur without fault and under circumstances not necessarily implying negligence.   *Linden v. Miller* (1920), 172 Wis. 20, 177 N. W. 909; *Cheves v. Miller* (1928), 195 Wis. 106, 217 N. W. 684; *Wobosel v. Lee* (1932), 209 Wis. 51, 243 N. W. 425; *Maltby v. Thiel* (1937), 224 Wis. 648, 272 N. W. 848.

The jury found the skidding of Gasser's automobile was caused by his negligent operation and management.   Gasser was an experienced driver and had full knowledge that the entire highway was icy and slippery.   He disconnected his motor by depressing the clutch, with full knowledge that plaintiff's car was approaching.   Appellants argue this was not a cause of the skidding because he had traveled between five and six hundred feet between the time of depressing the clutch and the time the car began to skid, and he had no difficulty in controlling his car.   He says he could not apply his brakes because this would have caused him to skid, and likewise letting

in his clutch would have caused him to skid. This wholly ignores the fact, which the jury had a right to infer, that if the clutch had been engaged and the automobile traveling at a reasonable rate of speed consistent with the conditions of the highway, he could have prevented it from skidding or taken it out of the skid by slightly increasing the speed. Likewise if the clutch had not been depressed he could have reduced the speed of the car by reducing the speed of the motor with less danger of skidding. Under the conditions created by the defendant he could neither increase nor decrease the speed of his car, and he had no control over it except such as he could exercise from the steering wheel. This presented an issue of fact for the jury on the question of management and control, which the court properly submitted, and the jury found against the defendant. Immediately after the accident defendant admitted to the plaintiff driver and to an officer that he lost control of the car and it was his fault. No claim is made by appellants that there was any error committed by the court during the trial. It is considered there is credible evidence to sustain the finding of the jury that defendant Gasser was guilty of causal negligence in the management and control of his automobile.

The further finding of negligence by the defendant with respect to speed requires no consideration unless the plaintiff Robert Zeinemann was guilty of negligence in the operation of his automobile. Appellants contend plaintiff Robert Zeinemann was guilty of negligence in the operation of his automobile with respect to speed, lookout, and management and control. The jury found for plaintiff Robert Zeinemann on all three questions. No serious claim is made with reference to speed and with the plaintiff driver having his car under control at all times we find nothing to justify our disturbing this finding.

With reference to lookout it is argued that from the undisputed facts plaintiff driver should have seen the Gasser car

approaching one thousand feet west of the point where he claims he first saw it. Zeinemann testified he saw the Gasser car when it was approximately two hundred fifty feet away. The evidence is that plaintiff driver saw defendant's car before it started to skid, which was about one hundred feet east of the point of collision. If he had seen it sooner there was nothing about the operation of defendant's car prior to the time plaintiff driver saw it which would have required him to do anything different than he did.

The main contention of appellants is that plaintiff driver was negligent in failing to stop his automobile prior to the collision. It is urged that when he saw defendant's car was out of control plaintiff driver should have applied his brakes and stopped his car. Plaintiff driver testified that immediately after seeing defendant's car south of the center line of the highway he removed his foot from the accelerator and turned to the right so that the right side of his car was two feet off the concrete at the time of the collision. His car had slowed down to ten miles an hour. Having chains on the rear wheels does not prevent them from skidding when the brakes are applied. In fact, it is more apt to skid sideways on ice with chains than without them. The testimony is that the entire roadway was slippery and part of the car being on the shoulder would not prevent it from being on a slippery part of the highway. If it was improper for the defendant to apply his brakes, which it is conceded it was, it was likewise improper for the plaintiff to apply his brakes. At least the jury had a right to so conclude, which it did. From the evidence it is considered the finding that plaintiff driver was free from negligence as to lookout and management and control was justified.

The last question raised by appellants is that the damages awarded to plaintiff Dorothy Zeinemann are excessive. The evidence shows Dorothy Zeinemann was a young, attractive, married woman, twenty-seven years of age, and prior to the accident had a perfect set of upper and lower teeth. As a re-

sult of the accident she received a complete fracture of the upper jaw, the fracture extending completely around the mouth and another fracture extending up and down at the back, enabling the doctor who attended her to move the entire upper jaw like a false denture. Four of the upper teeth were lost immediately and four of the lower teeth received a terrific blow and were loosened. The lower teeth are now crooked to a point where she is disfigured. There is testimony that some or all of these teeth may devitalize and have to be removed. Her entire face was bashed in, including smashing of the nose and sinuses. The jaw could not be set for two days due to swelling. She had a three-inch cut on the right knee, which required twelve sutures, and was at St. Nicholas hospital for seventeen days and in bed at her home for about a week after that. The four upper teeth have been replaced by a permanent bridge, but the entire upper jaw has been moved back an eighth of an inch, which condition is permanent. In order to improve the condition of the lower front teeth she will have to undergo the application of orthodontia appliances, consisting of bands and wires placed around the teeth with pressure applied to bring them into proper position, which treatment will require two or three years. This is the only way she can improve this disfigurement. With the aid of plastic surgery her face has been somewhat restored to its normal condition, but her facial expression and the contour of her face have been changed. The functions of her nose have been impaired, and her manner of vocal expression and speech are changed. She suffered severe pain and is still suffering severe and recurrent headaches. Appellants cite the case of *Kull v. Advance-Rumely Thresher Co.* (1932) 209 Wis. 565, 245 N. W. 589, and other cases to sustain their position that the damages are excessive. In the *Kull Case* the injuries were serious and some of them similar to those suffered by this plaintiff. However, the injuries in this case are sufficiently different and additional so that it is not ruled by the *Kull Case* and other cases

cited, all of which were decided during the depression period between 1931 and 1939. The jury had a right to award damages based on economic conditions existing at the time the verdict was rendered, and this court will give recognition to economic conditions in reviewing verdicts so rendered. Under all the facts we are unable to say the verdict is excessive.

*By the Court.*—Judgment affirmed.