McCarthy, Executrix, Plaintiff and Respondent, vs. Thompson and another, Defendants and Appellants: Hartford Accident & Indemnity Company, Impleaded Defendant and Respondent.*

*November 28—December 30, 1949.*

* Motion for rehearing denied, with $25 costs, on March 7, 1950.

For the appellants there was a brief by *Howard Eslien* of Oconto Falls, and *Bie, Welsh, Trowbridge & Wilmer* of Green Bay, and oral argument by *Walter T. Bie.*

*Emmet McCarthy* of Marinette, for the plaintiff-respondent.

*E. L. Everson* of Green Bay, for the impleaded defendant-respondent.

FAIRCHILD, J. This case involves an accident which occurred on Highway 41 north of Green Bay between a passenger car driven by deceased and a tractor-trailer driven by Thompson's employee, Gordon Konitzer. Evelyn McCarthy, widow of the deceased, brought an action for damages under the wrongful-death statute. Hartford Accident & Indemnity Company, insurer of the deceased's automobile, was impleaded as defendant, and Thompson filed a cross complaint for damages to the tractor-trailer. The only question of negligence litigated was the position of the vehicles at and immediately before the accident. In a special verdict

the jury found that Konitzer was not negligent in respect to the position of his tractor-trailer on the highway; that deceased was negligent in that respect and that such negligence was the cause of the accident. The court granted respondent's motion for a new trial in the interest of justice.

Sec. 270.49, Stats., provides in part:

"*Motion for new trial on minutes.* (1) The trial judge may entertain a motion to be made on his minutes, to set aside a verdict and grant a new trial . . . in the interest of justice; . . .

"(2) Every order granting a new trial shall specify the grounds therefor. . . . No order granting a new trial in the interest of justice shall be valid or effective, unless the reasons that prompted the court to make such order are set forth in detail therein. . . ."

The granting of a new trial is in the discretion of the trial judge and the supreme court can only reverse where there is a clear abuse of discretion shown. *Kies v. Hopper* (1945), 247 Wis. 208, 19 N. W. (2d) 167; *Sichling v. Nash Motors Co.* (1932), 207 Wis. 16, 238 N. W. 843; *Fontaine v. Fontaine* (1931), 205 Wis. 570, 238 N. W. 410.

However, we must reverse this order granting a new trial because the reasons set forth as prompting the court to make such order are not warranted by the evidence. In granting a new trial the court stated that the jury verdict was against the physical facts and was supported only by the testimony of Gordon Konitzer. Because he felt that Konitzer's testimony was ambiguous and equivocal, he considered that a new trial was necessary.

From a study of the record it appears clear that the court was mistaken as to a very important physical fact. Evidently an impression based on a failure to recall with accuracy the testimony of Officer Smith became a fixed opinion and led the trial judge to conclude that, "there

was no glass, oil, grease, or other residuals of a collision in the east lane of the highway even though McCarthy's left headlight and windshield were smashed and the radiator crushed." This opinion, which was held strongly by the trial judge, also accounts for his interpreting the testimony of Konitzer and Thompson differently than the jury did.

Officer Smith, who made the diagram reproduced herewith at the scene of the accident, testified:

"*Q.* I just want to make sure, Mr. Smith, that I have got this right. This heavy line, a short line, represents the center of the pavement, is that correct? *A.* That's right. That's the center line.

"*Q.* And these two long lines represent the edge of the concrete? *A.* That's right. . . .

"*Q.* . . . Now, what is that cross that you have right there? *A.* That's the debris, glass, the liquid from the smashed radiator and small particles of metal."

A glance at the diagram shows this cross is in the east lane.

The trial judge also thought the testimony of Witness Konitzer was equivocal and unsatisfactory and that it was against the inferences to be drawn from the physical facts. It is true that physical facts may at times speak so directly of the actual situation that they overcome the testimony of a witness. But the testimony here, when read in the light of the important physical fact overlooked by the judge, becomes consistent with and logically leads to the result reached by the jury. The same thing must be said of Thompson's testimony.

Konitzer's testimony is that the first intimation he had of a probable collision was when the deceased's car swerved toward him. His testimony as it appears in the appendix is:

". . . It was about forty or fifty feet from me when it swerved toward me. I swung to the shoulder of the road to get on the shoulder. The front right wheel dropped off the concrete. As I sat there in my cab I could not see

what part of his car came in contact with what part of my car. It was dark. I knew that he hit my front wheel because my wheels turned. When he hit it flung the steering wheel around the other way. It spun the wheel out of my hands and flung me across the cab."

When it appears that the glass, oil, and debris were found on the east side of the center line, the only interpretation to be given to Thompson's testimony is that it supports Konitzer's testimony. Thompson was following the deceased's car at a distance of four to six hundred feet. He couldn't say whether the deceased's car crossed over the center line. "I didn't notice any swerving either way." In answer to a question: "Had you observed the McCarthy car ahead of you up until that crash?" he answered: "Not particularly."

His further testimony is that three things happened almost simultaneously: First, he saw the beams of light from the tractor-trailer swerve to the northeast; second, he saw the side of the tractor-trailer lit up by the lights of deceased's car; and then he heard a crash.

This corroborates Konitzer's testimony. The lights of the tractor-trailer swerved to the northeast when Konitzer swerved the tractor-trailer to the shoulder of the highway. The side of the trailer was lit up by the lights of the deceased's car.

After the collision the tractor-trailer was overturned on the shoulder of its side of the road. (See Smith's sketch.) There was a dark-red paint spot on the left corner of the front bumper. This was evidently made at the time of impact by deceased's car which was dark red. There was a deep gouge in the east shoulder made by the tractor-trailer. All of these corroborate the testimony of the witnesses.

It is considered that the testimony and physical facts strongly support the jury verdict. It appears from the

record that the trial court arrived at the result he did because he was mistaken as to one very important fact: He thought there were no signs of a collision on the east lane of the highway. It must be held that there was an abuse of discretion in setting aside the verdict and ordering a new trial.

*By the Court.*—Order reversed. Cause remanded with directions to reinstate the verdict and enter judgment in favor of defendants accordingly.