Fyksen, Appellant, vs. Fyksen and another, Respondents.

*September 10—October 5, 1954.*

For the appellant there were briefs by *Frank L. Morrow* of Eau Claire, and *Emery & Woodside* of Marshfield, and oral argument by *Mr. Morrow*.

For the respondents there was a brief by *Graves & Chambers* of Wisconsin Rapids, and oral argument by *Lloyd L. Chambers*.

CURRIE, J.   It will be noted from a reading of the foregoing statement of facts that no issue of negligence on the part of the defendant husband was submitted to the jury but instead a question inquiring as to whether defendant had been guilty of wilful and wanton misconduct in the operation of his automobile.  The accident occurred in the state of Ohio and, therefore, is subject to the substantive law of Ohio, not that of Wisconsin.

Sec. 6308–6, 4–A Page, Ohio General Code, Anno., provides as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the *wilful or wanton misconduct* of such operator, owner, or person responsible for the operation of said motor vehicle."   (Italics supplied.)

Under Ohio law any contributory negligence on the part of a plaintiff bars recovery in actions to recover damages for negligence, but contributory negligence is not a defense if the conduct of the actor causing the injury constituted wilful or wanton misconduct.  As a result of this, as well as because of the above-quoted guest-host liability statute, the Ohio courts frequently have been called upon to pass upon the question of what acts constitute wilful or wanton misconduct.  In the instant case we are concerned only with wanton misconduct

because there is no claim made, nor could there be, that defendant husband's conduct was such as to manifest an intention to injure the plaintiff wife, which would be necessary in order for the same to be wilful.

One of the leading Ohio cases dealing with the subject of wanton misconduct is that of *Universal Concrete Pipe Co. v. Bassett* (1936), 130 Ohio St. 567, 200 N. E. 843, 119 A. L. R. 646. Syllabus 2 of the opinion in that case defines wanton misconduct as follows:

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act *must be conscious,* from his knowledge of such surrounding circumstances and existing conditions, *that his conduct will in all common probability result in injury.*" (Emphasis supplied.)

The foregoing quoted definition of wanton misconduct set forth in syllabus 2 of *Universal Concrete Pipe Co. v. Bassett, supra,* has been cited and quoted in many subsequent Ohio cases, and we are satisfied that the same represents the generally accepted definition of that term in use by the Ohio courts. In the light of such definition, we will now examine the facts of the instant case bearing on the conduct of the defendant husband at the time of the accident. Because of the jury's verdict in favor of the plaintiff wife, we must view such facts in the light most favorable to the plaintiff.

The Fyksens resided in Marshfield, Wisconsin, and on the morning of Saturday, October 6, 1951, they left Marshfield in a 1949 Hudson sedan on a trip to visit their married daughter who lived in Watertown, Connecticut. They reached Wooster, Ohio, that evening and stopped at a motel there overnight. The next morning, Sunday, October 7, 1951, they left Wooster between 8 and 8:30. It was raining from the time they left Wooster up until the time of the accident, which occurred about 10 o'clock that morning about six miles

west of East Liverpool, in the extreme eastern portion of Ohio.

Mr. Fyksen did the driving with Mrs. Fyksen seated to his extreme right with their thirteen-year-old son seated between them. That morning Fyksen generally operated the car at a speed of 65 to 75 miles per hour. Several times Mrs. Fyksen spoke to him and protested that he was driving too fast. He would then slow down the speed somewhat but each time before long the speed would again be gradually increased until it was up to where it had been prior to Mrs. Fyksen's protest. The last of such protests by Mrs. Fyksen had been made sometime back before the occurrence of the accident. Shortly before the accident Mrs. Fyksen had been looking at a magazine but testified that she had ceased this at the time the accident occurred.

The Fyksen automobile had been proceeding on a straight-away and approached a curve which angled to the right. The photographs in evidence disclose that such curve would be more accurately described as a gradual one rather than a sharp one. Mr. Fyksen testified that it was his usual custom when approaching a curve to reduce his speed. In doing so in this instance he was uncertain whether he applied his brakes before the vehicle started to skid but that he did do so after it commenced to skid. In any event the car skidded to the left and went off the pavement and turned over injuring Mrs. Fyksen. Mrs. Fyksen estimated the speed of the car as it approached the curve to have been 70 to 75 miles per hour. The maximum legal speed limit in Ohio is 50 miles per hour, which fact was known to Mr. Fyksen, whose occupation is that of a police officer. His justification for driving at a speed in excess of such legal limit was that most other drivers did so when traversing highways in open country.

From this summary we deem that the facts do not support an inference that Mr. Fyksen was *"conscious . . . that his conduct"* was such that it would *"in all common probability*

result in injury" to the passengers in his car. It is true that he was operating his car at an excessive speed both from the standpoint of the rain and the maximum speed limit permitted under Ohio law, and had been requested by his wife to drive slower. However, he had driven at a fairly consistent rate of speed during the hour and a half preceding the accident. Such speed was apparently not very alarming to Mrs. Fyksen, otherwise she would not have been engrossed in looking at a magazine shortly before the accident. His conduct in slowing down for curves, including the one being approached at the time of the accident, is inconsistent with the theory that his conduct was such as to justify an inference that he was driving so·recklessly as to have no regard for the safety of his passengers.

In the case of *Helleren v. Dixon* (1949), 152 Ohio St. 40, 86 N. E. (2d) 777, the Ohio court had before it the same question with which we are faced here, *i. e.*, whether the acts of the defendant host-driver constituted wanton misconduct under sec. 6308–6 of the Ohio General Code toward his guest passenger, the plaintiff. There the defendant had driven his automobile up a grade in a rainstorm at a speed which the plaintiff claimed was excessive. The going upgrade caused the windshield wiper not to operate and, for a distance of the last 300 feet traveled prior to the accident, the defendant could not see ahead through the windshield. During the last 150 feet the right wheels were off the pavement onto the shoulder (referred to as the "bērm"), but defendant was not aware of this. The car struck the wall of a culvert injuring the plaintiff. With respect to the plaintiff's claim of excessive speed, the court held that because of the ancient vintage of the vehicle there was no substantial evidence that it could have been going faster than 35 to 40 miles per hour uphill. The defendant's excuse for ploughing ahead during the last 300 feet when he could not see, because of the failure of the windshield wiper to function, was "I just took a chance on nothing

happening." The Ohio supreme court reversed the judgment in behalf of plaintiff, thus holding as a matter of law· that there was no wanton misconduct, and in its opinion stated (152 Ohio St. 46, 86 N. E. (2d) 780) :

"We do not believe that any reasonable interpretation of the evidence would justify either the conclusion (a) that defendant's conduct manifested 'a disposition to perversity,' or (b) that defendant knew that his conduct would 'in all common *probability* result in injury.' Plaintiff emphasizes the admission by defendant that he 'took a *chance* on nothing happening.' There is a wide gap between chance and probability."

The recent case of *Ulrich v. Massie* (1951), 89 Ohio App. 362, 102 N. E. (2d) 274, presented a fact situation even stronger than in the instant case for finding excessive speed on the part of the defendant host-driver to have constituted wanton misconduct. There were five occupants in the car besides the driver, two of the five being seated in the front seat with the operator, and the other three in the rear seat. The highway where the accident occurred had a macadam surface 18 feet wide. The car was proceeding westerly and the accident occurred as the result of the car leaving the improved portion of the highway and striking the side of a concrete bridge four feet two inches north of the north edge of the macadam. The speedometer after the accident indicated that the speed at the time of the accident was approximately 80 miles per hour. As a result of the accident two of the passengers were killed, and the action brought was in behalf of one of the other passengers who was injured. Approximately two or three minutes before the accident occurred one of the passengers had been sleeping and the defendant driver, in order to awaken him, drove off the paved surface onto the shoulder and back with a sudden jerk, as the result of which some of the other occupants warned the driver to "take it easy," "cut it out," or "stop it," but such warnings

had reference to the incident of intentionally suddenly driving off the pavement and back, rather than as to the speed. The jury returned a verdict in favor of plaintiff and judgment was rendered thereon and defendant appealed. The Ohio court of appeals reversed on the ground that as a matter of law there was no wilful or wanton misconduct and that it was error for the trial court, therefore, not to have granted defendant driver's motion for a directed verdict. The court quoted with approval the definition of wanton misconduct set forth in syllabus 2 of *Universal Concrete Pipe Co. v. Bassett, supra.*

We, therefore, conclude after examination of the foregoing Ohio authorities, together with other Ohio decisions studied by us in passing on this appeal, that the learned trial court properly granted the defendants' motion for a directed verdict in the case at bar.

*By the Court.*—Judgment affirmed.