BRUNKE and others, Respondents, v. POPP, Appellant.

*October 29—November 26, 1963.*

460

For the appellant there were briefs by *Kivett & Kasdorf*, attorneys, and *John R. Henderson* and *John M. Swietlik* of counsel, all of Milwaukee, and oral argument by *Mr. Henderson*.

For the respondents there was a brief and oral argument by *Jack L. Goodsitt* of Milwaukee.

CURRIE, J. The trial court held that the law of Georgia determined the rights and liabilities of the parties, because the accident happened in Georgia.[1] Under the common-law

---

[1] The traditional choice-of-law rule has been that the substantive rights and liabilities arising out of a tortious occurrence are determinable by the place of the tort. This rule was embodied in original Restatement, Conflict of Laws, p. 457 *et seq.*, sec. 377 *et seq.* Pursuant to this rule this court has applied the guest statute of the state where the accident occurred in which domiciliaries of this state were injured in *Oehler v. Allstate Ins. Co.* (1958), 2 Wis. (2d) 656, 87 N. W. (2d) 289; *Urban v. Chars* (1957), 1 Wis. (2d) 582, 85 N. W. (2d) 386; *Fyksen v. Fyksen* (1954), 267 Wis. 542, 66 N. W. (2d) 150. However, as pointed out in *Wojciuk v. United States Rubber Co.* (1963), 19 Wis. (2d) 224, 235c, 120 N. W. (2d) 47, 122 N. W. (2d) 737, footnote 7, the Tentative Drafts of Restatement, Conflict of Laws (2d), indicate a tendency to resolve the choice of law on the basis of the state with which the occurrence has its most-significant relationship. Tentative Draft 8, Conflict of Laws, Wrongs, p. 3, sec. 379. An instance in which this court has applied this latter rule is *Haumschild v. Continental Casualty Co.* (1959), 7 Wis. (2d) 130, 95 N. W. (2d) 814, where we dealt with a family-relationship immunity problem. When confronted with a guest statute of another jurisdiction in which the accident occurred, at least one state has applied its own law on the issue of the effect that the host-guest relationship had on the host's liability for negligent operation of a motor vehicle, the host and guest being its own

rule in Georgia a host-driver of a motor vehicle is not liable to an invited guest for ordinary negligence, but only for gross negligence. *Epps v. Parrish* (1921), 26 Ga. App. 399, 106 S. E. 297. A more-recent Georgia case in which this rule was applied is *Chancey v. Cobb* (1960), 102 Ga. App. 636, 117 S. E. (2d) 189, application for certiorari denied. Gross negligence is defined by sec. 105–203, Georgia Code Annotated.[2] Such definition, however, is less restrictive than the definition of gross negligence which had been adopted by this court before it was abolished in *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105.

With this background in mind we now turn to the sole question presented by this appeal, viz., Was it an abuse of discretion for the trial court to have granted a new trial in the interest of justice? It is well settled that a trial court has the power to grant a new trial in the interest of justice because the verdict is against the great weight of the evidence. *Pingel v. Thielman* (1963), 20 Wis. (2d) 246, 248, 121 N. W. (2d) 749, and cases cited therein. This is true even though it cannot be held as a matter of law that a crucial answer to a question of the verdict is wrong in the sense that it is not supported by any credible evidence. Cf. *Bohlman v. Nelson* (1958), 5 Wis. (2d) 77, 81, 92 N. W. (2d) 345. There can be no abuse of discretion found, in granting a new trial in the interest of justice because one or more material answers in the verdict are against the great weight of the evidence, if there exists a reasonable basis for the trial

---

residents. *Babcock v. Jackson* (1963), 12 N. Y. (2d) 473, 191 N. E. (2d) 279. In the instant case, however, Wisconsin law would not be applicable under either rule because Jane Brunke and Fredy Garces were nonresidents of Wisconsin.

[2] This statute provides as follows: "In general, slight diligence is that degree of care which every man of common sense, howsoever so inattentive he may be, exercises under the same or similar circumstances. . . . The absence of such care is termed gross negligence."

court's determination that this is the case. *Pingel v. Thielman, supra.*

We are here concerned only with the jury's answer to the first question of the verdict whereby the jury absolved defendant of gross negligence. The plaintiff's evidence which tended to establish gross negligence on defendant's part was his drinking beer at lunch around noon on the day of the accident, followed by his drinking considerable amounts of vodka while driving that afternoon. Defendant conceded drinking beer at lunch but denied drinking vodka while driving. Plaintiff Dolores Fischer testified that about an hour after lunch defendant stopped at a liquor store and bought a bottle of vodka. She further stated that during the afternoon, on four different occasions, he drank from this bottle of vodka, which he had beside him on the front seat.

Officer Chappell of the Georgia state patrol, who investigated the accident, testified as follows: He found a bottle of vodka in a canvas zipper bag inside the car. This bottle was one fifth of a gallon in size, was not damaged in any way, and none of the contents had leaked out into the bag or car. The bottle was only one fourth to one third full after the accident. Chappell interviewed defendant at the hospital after the accident. The officer smelled the odor of alcohol about defendant and observed that his eyes were not clear. Defendant was hostile, unco-operative and unresponsive to questions unless they were asked two or three times. Chappell, who had considerable training in observing people under the influence of liquor, expressed the opinion that defendant was then under the influence of alcohol.

Defendant's adverse deposition had been taken before trial. In this he testified that he had bought the fifth of vodka at an Atlanta liquor store after lunch on the day of the accident (May 26th). At the trial defendant was called as an adverse witness by plaintiffs and during this testimony he denied that he purchased the bottle of vodka on the 26th and stated that

it had been purchased on either May 24th or May 25th. He further stated that Dolores and he had had some highballs in the motel, that he had put the bottle in the zipper bag, and had not drunk any of it after that while driving the automobile. Not only did he repudiate his adverse deposition testimony regarding the date of the purchase of the vodka, but he was very evasive in answering many questions. The trial court in its memorandum opinion stated:

"The Court after examining the whole of the transcript of the record is of the opinion that the testimony given by the Defendant was replete with contradictions and intentional falsehoods uttered as answers to the questions propounded to him by Counsel for the Plaintiffs. The Defendant when interrogated at the adverse examination was able to answer most of the questions asked, but at the time of the trial with the same or similar questions being propounded to him, his stock answer would uniformly be, 'I don't remember,' or 'I don't know.'"

Our review of the record convinces us that the above-quoted analysis of defendant's testimony is accurate and afforded a reasonable basis for the trial court's disbelieving defendant's testimony given at the trial. We deem apposite this statement made in *Losching v. Fischer* (1941), 237 Wis. 193, 196, 295 N. W. 712:

"To say that confusion may arise in the minds of the witnesses to the accident and that contradictory statements may be made, is only to acknowledge human frailties, and the lack of mathematical certainty in matters where the truth depends on human observation and recollection. But when such failures appear to be colored and qualified by a desire to serve some ulterior purpose, they have not only an impeaching character but may furnish grounds for granting a new trial in the interests of justice."

In another portion of the trial court's memorandum opinion it was stated:

"A review of the whole of the transcript of the trial clearly indicates that the testimony of the Defendant was contrary to the physical facts."

The trial court did not point out in what respect defendant's testimony was contrary to physical facts. Defendant's counsel attack this last-quoted statement from the memorandum opinion on the ground that the trial court was in error in making it. It may well be that the trial court had reference to the fact that after the accident the tire marks of defendant's car showed that it traveled 685 feet from the point where it first went onto the left shoulder until it came to rest upside down at the abutment on the right shoulder. However, there was a dispute between the testimony of Chappell and that given by Dorsey, the driver of the other vehicle whom defendant was attempting to pass. Dorsey stated that as defendant attempted to pass, defendant's car hit a "rough place in the road." Chappell, on the other hand, testified that he examined the pavement where the attempted passing took place and found no defects in it. The trial court could well conclude that even if Dorsey's testimony were true as to there being a rough place in the road, this alone, without the drinking on the part of defendant, would have been insufficient to cause defendant's car to travel out of control the great distance it did before striking the abutment. In any event, even if the trial court's statement with respect to physical facts is disregarded, there was ample basis for him to reasonably conclude that defendant's testimony was not to be believed.

Defendant's counsel further argue that Dolores Fischer also gave testimony at the trial contradictory from that given at her adverse examination before trial. At her adverse examination she testified that the last thing she remembered before the accident was that defendant's car was operating in the right-hand lane at a speed of 45 miles per hour and

that she did not remember anything after that. At the trial she testified that just prior to the accident she recalled that defendant tried to pass another car, went off the road, came back on again, and then went off the road to the right. Even if all of Dolores Fischer's testimony were eliminated from consideration, except such as is corroborated by other evidence, there still remains an ample reasonable basis for the trial court's conclusion that the jury's answer to the first question was against the great weight of the evidence. Dolores Fischer's key evidence was the fact that defendant had drunk from the bottle of vodka several time while driving the afternoon of the accident. This is corroborated by defendant's testimony on his adverse examination before trial that the vodka had been purchased after lunch on the afternoon of the accident, and by Chappell's testimony that the bottle contained but one fourth to one third of vodka at the time he observed it after the accident.

On this state of the record we conclude that there was a reasonable basis for the trial court's granting a new trial in the interest of justice, and that it did not abuse its discretion in so doing.

*By the Court.*—Order appealed from is affirmed.