FIRST WISCONSIN LAND CORPORATION, Respondent, v. BECHTEL CORPORATION and others, Appellants.

*No. 267 (1974). Submitted under sec. (Rule) 251.54 December 2, 1974.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 288.)

456

458

The cause was submitted for the appellants on the brief of *Charles J. Drury* and *Drury & Roets,* all of Portage; and for the respondent on the brief of *Sidney F. Beck, Jr.,* of Friendship.

HANLEY, J. We have concluded that the verdict in this case is not supported by sufficient evidence and that an important issue, which will probably affect the outcome of the case, was not tried. Therefore we reverse and remand for a new trial.

The principal evidentiary dispute in this case has to do with the dates during which the pipeline trench crossing the plaintiff's land was excavated and left open and culverts were placed in a sod waterway for the purpose of supporting the trenching equipment as it crossed the waterway. According to plaintiff's manager, the land was planted with beans on June 21, 22, 23, and 25, 1968. The trench was started shortly after this planting and stayed open two or three weeks in the months of June or July 1968. The manager testified that the bottoms of the culvert openings were three or four feet above the bottom of the waterway, so that water would not run into the trench while it was open. This dam backed up rainwater, which flooded 40 or 50 acres on the north end of the field. Thirty or 40 acres on the south end became very dry and couldn't be irrigated because the irrigation machinery could not cross the pipeline trench. A portion of the field not under water was replanted in the middle of July; but the plaintiff did not get a full harvest because it was too late in the season and frost retarded the crop.

The grade foreman for Houston Contracting Company denied that the pipeline trench was open during the end of June and first part of July. He testified that the trench was dug between July 16 and July 18, 1968. He inspected the field on July 13th. The beans were in, the

lowlands were flooded and the crops were spotty. The sod waterway had water 12 to 14 inches deep in it and the land was boggy. He went back on the 15th and saw that the water had gone down so that he could use culverts rather than a bridge to support the trenching equipment as it crossed the sod drain. He ordered three culverts put in the sod drain and had logs laid along side to support the culverts. The bottoms of the culverts were approximately three or four inches above the bottom of the waterway. In his opinion the culverts could not have dammed up the waterway.

The field progress reports of Houston Contracting Company were introduced into evidence by the defendants for the purpose of showing when the pipeline trench was dug. These reports covered a period of time from May 6, 1968, to September 30, 1968, and extended from Wisconsin Rapids to Portage. According to these reports, the trench in this field was dug on July 18 and July 19, 1968, and was backfilled on August 8th and 9th. However, the progress report for the week from July 14th through July 20th had originally been dated June 14th through June 20th, and the month had been changed in pen. Defendants claimed this was a typographical error. The witness who identified this report was subjected to searching cross-examination on this point. One of the issues raised by defendants on this appeal is that the trial court committed error in allowing such cross-examination, because the reports of July 12th and 13th, the reports with the dates changed to July 14th through 20th, and the reports for August 8th and 9th were the subject of a demand to admit or deny which was served upon the plaintiff and was answered as follows:

"4. That the plaintiffs admit the facts shown by the work schedule of Houston Contracting Company as set forth in their letter to Charles J. Drury dated October 30, 1972, with attaching work schedules."

Although the progress reports furnish one of the new trial grounds in this case, the trial court did not err in permitting cross-examination with respect to the change in date. A demand to admit or deny, sec. 889.22, Stats., is designed to obtain concessions from the other party as to the existence of facts or foundation for the admission of documentary evidence. If an admission is made, the evidence is established without the necessity of laying a foundation. If the other party unreasonably refuses to admit, the reasonable expense of laying the foundation is taxed as costs against the party so refusing. Sec. 889.22 (4). If, after obtaining an admission, the party making the demand chooses to lay the foundation anyway, there is no purpose served by the demand or admission. The procedure under sec. 889.22 is a sword for the introduction of evidence; it is not a shield for the restriction of cross-examination.

One of the reasons this case must be remanded for a new trial is that a portion of the progress records that were not challenged by the plaintiff directly contradict the testimony given in support of the plaintiff's case. Plaintiff's manager testified that the first crop was planted beginning June 21st and ending June 25th. He further testified that the pipeline trench was opened after the planting and remained open for two or three weeks. The records of Houston Contracting Company purported to show that the trench was opened around July 18th and closed about August 8th. The records for the entire period when the pipeline was being constructed from Wisconsin Rapids to Portage are internally consistent. They cover a variety of operations in many different areas. The manpower involved in falsifying the entire six months of records would have been staggering. If the jury believed that these records had been altered, so that the week of July 14th to 20th was actually the report for June 14th to 20th, nevertheless, the records

contradict the testimony of plaintiff's manager because they place the time of digging the trench before the crop was planted. Moreover, there is no testimony by anyone that the trench was closed around July 8th. If all the records had been backdated one month, this would have been the date the trench was backfilled. Plaintiff did not challenge that portion of the records showing that that backfilling occurred around August 8th. If the trench had been opened in the last week of June and closed in the first week of August, it would have remained open for about six weeks. This is contrary to all the evidence in the case.

We are unwilling to hold that the verdict in this case was unsupported by any credible evidence, because the jury was entitled to believe the testimony of the plaintiff's witnesses and to reject the evidence offered by the defendants, including the progress reports. However, we view the jury's verdict as contrary to the great weight and clear preponderance of the evidence. In such a case it is appropriate for the trial court to order a new trial in the interest of justice, even though a new trial cannot be granted on the grounds that the verdict is contrary to the evidence. *McPhillips v. Blomgren,* (1966), 30 Wis. 2d 134, 140 N. W. 2d 267. We hold the trial court abused its discretion in refusing to order a new trial in the interest of justice.

In addition to holding that the trial court should have granted a new trial in the interest of justice because the verdict was contrary to the great weight and clear preponderance of the evidence, we exercise our own discretionary power under sec. 251.09, Stats., to order a new trial in the interest of justice. This is done because all the issues in the case have not been fully tried, and it is probable that a new trial would reach a different result. The plaintiff treated the $2,205 which it received pursuant to the damage agreement as payment

for damages to the 80-foot easement strip. The damage agreement is ambiguous when it speaks of damages "caused or to be caused by initial pipeline construction activities upon or within the 80-foot wide construction work strip." Plaintiff interpreted this phrase to mean damages caused to the easement area. An equally reasonable interpretation is that any damages caused to the entire real estate as a result of work within the easement were compensated by the $2,205 payment. It was apparently part of the damage agreement that the trench would be dug and backfilled within three to five days, and this was not done. Since that condition was breached, the plaintiff may be entitled to recover damages for the breach, subject to a credit to the defendant for so much of the $2,205 as exceeded the other damage done by the construction work. Neither the issue of total payment nor the issue of partial credit has been raised by the defendants on appeal, but these issues are within the scope of the pleadings. In fact, defendants asked for credit as part of their motion for new trial. However, it was not possible to grant relief short of a new trial, because an allocation could not have been made on the evidence of record.

Defendants also object to the jury's verdict on the grounds that the damages are excessive. The defendants' theory is that testimony as to the plaintiff's costs in growing the beans was irrelevant and should not have been considered by the jury, because the question for consideration was the difference in the value of the crop before and after the injury. In estimating the value of the crop before the injury, it was necessary to know what the crop could be expected to bring at harvest time and what the cost of growing the crop would be. The difference between these two figures is an acceptable method of estimating the value of the crop before the injury.

The trial court properly denied a new trial on this ground.

*By the Court.*—Judgment reversed and the cause remanded for a new trial.