Yvonne Krolikowski, Incompetent, by her Guardian, Robert F. Krolikowski, Plaintiff-Appellant, v. Chicago & Northwestern Transportation Company, Defendant-Respondent: Bourgeois, Defendant.†

Supreme Court

*No. 76–300. Submitted on briefs March 28, 1979.—Decided May 30, 1979.*
(Also reported in 278 N.W.2d 865.)

---

† Motion for reconsideration denied, with $50 costs, on June 29, 1979.

For the appellant the cause was submitted on the briefs of *Edward F. Neubecker, Barry F. Bruskin* and *Neubecker, Schrinsky & McKnight* of Milwaukee.

For the respondent Chicago & Northwestern Transportation Company the cause was submitted on the brief of *Joseph D. McDevitt* and *Borgelt, Powell, Peterson & Frauen, S. C.,* of Milwaukee.

SHIRLEY S. ABRAHAMSON, J. Mrs. Krolikowski suffered personal injuries and her husband and daughter were killed when their car, which had stopped in front of the railroad crossing gates, was pushed onto the railroad crossing by Bourgeois' moving car and was struck

by a train operated by the Chicago & Northwestern Transportation Company, Inc. (C&NW). The jury determined that Bourgeois and the C&NW were both causally negligent, assigning 95 percent negligence to Bourgeois and 5 percent to the C&NW. We affirm that part of the trial court's order denying C&NW's motion for a directed verdict and reverse that part of the order granting C&NW's motion for a new trial on the issue of negligence.

## I.

At about 8:00 p.m. on February 9, 1973, the Krolikowski car was stopped in front of the lowered railroad crossing gates at the intersection of West Beloit Road and the C&NW railroad tracks. A C&NW train approached the intersection. Snodgrass, the train engineer, saw the Krolikowski car stopped at the crossing and saw the car driven by Bourgeois approaching the rear of Krolikowski's car. Snodgrass realized that Bourgeois was going too fast to be able to stop before the crossing. Snodgrass testified that he did not blow the air horn on his engine to alert Bourgeois of the train because a West Allis ordinance prohibits the blowing of the horn, although Snodgrass admitted it was permissible to use the horn in an emergency.

Bourgeois testified that he first saw the Krolikowski car when he was "just about on top of it." He braked and turned to the left, hitting the left rear of the Krolikowski car with the right front of his own. The collision sent the Krolikowski car rolling onto the tracks. Wasylko, the train's brakeman, alerted Snodgrass, and just as the train reached the edge of the Beloit Road, Snodgrass set the emergency brake and shut off the throttle. The train picked up the Krolikowski car and carried it for 1,360 feet, about two and one-half blocks.

## II.

■

C&NW contends that the trial court erred in denying its motion for a directed verdict. A motion for a directed verdict will be granted if there is no credible evidence to sustain the verdict.[1]

C&NW contends that the evidence, taken most favorably to Krolikowski, requires the conclusion that its engineer was acting in an emergency not of his own making; that the time during which the engineer could react was so short that his reaction was instinctive or intuitive; that under the standard of the emergency rule the engineer's action or inaction in the emergency was not negligent as a matter of law; and that as a matter of law C&NW was entitled to the protection of the emergency doctrine. *Seif v. Turowski,* 49 Wis.2d 15, 23, 181 N.W. 2d 388 (1970).

■

We conclude that there was credible evidence for the jury to find under the emergency rule[2] that the engineer

---

[1] Sec. 805.14(1), Stats.:

"**805.14 Motions challenging sufficiency of evidence; motions after verdict.** (1) TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

[2] The trial court instructed the jury on negligence in an emergency as follows:

"Railroad engineers of a railroad train who are suddenly confronted by an emergency, not brought about or contributed by their own negligence and who are compelled to act instantly to avoid collision or injury are not guilty of negligence if they make such choice of action or inaction as an ordinarily prudent person might

was negligent, that is, a reasonable person in the position of the engineer would have blown the train's horn to warn Bourgeois and others in the vicinity of the railroad crossing. Snodgrass' testimony indicated that he had time to react, to reason and to redecide what to do. The record shows that when Snodgrass realized that Bourgeois was going too fast to stop at the train crossing and that there was a possibility of a collision, he considered blowing the air horn as a warning that the train was coming. He testified that he did not blow the horn because a West Allis ordinance prohibited blowing the horn. But he admitted that the ordinance permitted him to blow the horn in an emergency.

The right front corner of the Bourgeois car hit the left rear corner of the Krolikowski car. The jury could have concluded that if Bourgeois had been alerted to the danger sooner than he was, the collision would have been avoided.

The trial court determined, on the basis of testimony regarding the distances, speeds and times involved in the incident, that 1.96 seconds elapsed between the time that Snodgrass realized that Bourgeois was going too fast to stop and the time that Bourgeois hit the Krolikowski car. Relying upon the standard reaction times stated in the Wisconsin Motorists Handbook, the trial court found that it would take Snodgrass ¾ of a second to activate the air horn and Bourgeois ¾ of a second to react to the horn and take action. The trial court further found that the remaining .46 second was sufficient time for the Bourgeois car to turn so as to miss the Krolikowski car,

make if placed in the same position, even though it should afterwards appear not to have been the best or safest course.

"You will bear in mind, however, that the rule just stated does not apply to any person whose negligence wholly or in part created the emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in the creation of the emergency."

taking into account the fact that Bourgeois struck the Krolikowski car's left rear with his right front.

C&NW asserts that the evidence shows that Bourgeois had been drinking, the tape machine in his car was playing loud music, and there was a wet road surface. C&NW argues that it therefore would have taken Bourgeois more than $\frac{3}{4}$ of a second to react to the horn and more than .46 seconds to turn his car far enough to avoid the Krolikowski car. Notwithstanding the evidence to which C&NW points, the evidence as a whole, taken most favorably to Krolikowski, suffices to support the jury's finding of causal negligence.

We conclude that the trial court properly denied C&NW's motion for a directed verdict.

## III.

Krolikowski contends that the trial court erred in granting a new trial on the issue of negligence in the interest of justice.

Sec. 805.15, Stats., governs motions for a new trial and the order granting a new trial. It provides that a party may move for a new trial in the interest of justice.

Sec. 805.15(1), Stats., provides:

"805.15 **New trials.** (1) MOTION. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. Orders granting a new trial on grounds other than in the interest of justice, need not include a finding that granting a new trial is also in the interest of justice."

Sec. 805.15(2), Stats., requires that an order granting a new trial in the interest of justice specify the reasons that prompted the court to so act.

"(2) ORDER. Every order granting a new trial shall specify the grounds therefor. No order granting a new trial shall be valid or effective unless the reasons that prompted the court to make such order are set forth on the record, or in the order or in a written decision. In such order, the court may grant, deny or defer the awarding of costs."

A new trial may be granted in the interest of justice when the jury findings are contrary to the great weight and clear preponderance of the evidence, even though the findings are supported by credible evidence. *Stewart v. Wulf*, 85 Wis.2d 461, 472, 271 N.W.2d 79 (1978); *First Wisconsin Land Corp. v. Bechtel Corp.*, 70 Wis.2d 455, 462, 235 N.W.2d 288 (1975); *Loomans v. Milwaukee Mut. Ins. Co.*, 38 Wis.2d 656, 660–63, 158 N.W.2d 318 (1968); *Brunke v. Popp*, 21 Wis.2d 458, 462, 124 N.W.2d 642 (1963). The order granting a new trial in the interest of justice must contain the reasons and bases for the general statement contained therein that the verdict is against the great weight and clear preponderance of the evidence. Review by this court is ordinarily limited to the reasons specified in the trial court's order. *Loomans, supra*, 38 Wis.2d at 661, 666.

On review of an order granting a new trial in the interest of justice, this court does not seek to sustain the verdict of the jury but looks for reasons to sustain the findings and order of the trial judge. The granting of a new trial is in the discretion of the trial court, and this court may reverse only where a clear abuse of discretion is shown. The principles guiding the the supreme court in its review of the trial court's discretion were stated in *Bartell v. Luedtke*, 52 Wis.2d 372, 377, 190 N.W.2d 145 (1971):

" '. . . It is elementary that in such cases the supreme court does not look for evidence to sustain the jury's find-

ings, but seeks reasons for sustaining the trial court. Essentially, the supreme court usually defers to the trial court's decision because of the trial court's opportunity to observe the trial and evaluate the evidence, and the order is highly discretionary. If one ground relied upon by the trial court in granting a new trial in the interest of justice is correct, this is sufficient to affirm the order of the trial court.' [Citation omitted.]"

No abuse of the trial court's discretion will be found if the trial court sets forth a reasonable basis for its determination that one or more material answers in the verdict are against the great weight and clear preponderance of the evidence. *Brunke v. Popp, supra,* 21 Wis.2d 458, 462–63. There is an abuse of discretion if the trial court grounds its decision upon a mistaken view of the evidence or an erroneous view of the law. *McCarthy v. Thompson,* 256 Wis. 113, 40 N.W.2d 560 (1949) ; *Quick v. American Legion 1960 Convention Corporation,* 36 Wis.2d 130, 152 N.W.2d 919 (1967).

On review of the record we conclude that we must reverse the order granting the new trial in the interest of justice in the case at bar because the reason set forth as prompting the order is not warranted by the evidence.

The trial court stated in its memorandum decision that it granted the new trial on the ground that Snodgrass was confused "as to what time period the questions were addressed."

"It is the opinion of this Court that this is the kind of case in which the Court should exercise its discretion and grant a new trial on the issue of negligence in the interest of justice. Clearly, the preponderance of the evidence indicates an emergency situation and a reasonable choice. The attempt by the engineer to clarify his activities does not create a clear contradiction, but rather a confusion on the part of the main witness as to what time period the questions were addressed. This is the

only credible evidence to sustain the verdict. The interests of justice then dictate that this Court exercise its discretion in granting a new trial in the interest of justice on the issue of negligence."

It is not clear from the above quoted paragraph of the trial court decision what part of the engineer's testimony creates the confusion which persuaded the trial court to grant a new trial. Other parts of the trial court's memorandum decision indicate that the confusion in the testimony perceived by the trial court related to the time when Snodgrass set the emergency brake. The trial court concluded that Snodgrass' testimony was confused as to whether he set the brake when he first realized how fast Bourgeois was driving or whether he set the brake after the Bourgeois vehicle struck the Krolikowski car.

From a study of the record it appears that at several points Snodgrass testified that he set the brake after the Bourgeois car struck the Krolikowski car.[3] The brakeman corroborated this testimony.[4]

---

[3] "*Q.* At any time before the Bourgeois vehicle struck the Krolikowski vehicle, did you brake—did you set the emergency brake?

". . .

"*A.* Before he struck the car?

"*Q.* Yeah.

"*A.* No."

(R. 47, A. Ap. p. 111)

"*Q.* Did you at any point activate your emergency brake on the train?

"*A.* Yes.

"*Q.* When was that?

"*A.* Approximately about the sidewalk level or in line with the sidewalk edge of the crossing.

"*Q.* With the—

"*A.* Edge of the road.

"*Q.* You talking about the north part of the sidewalk?

"*A.* Yes.

"*Q.* And where was the Krolikowski vehicle at that point?

"*A.* The Krolikowski vehicle was setting on the track in the traffic lane.

The only part of Snodgrass' testimony which the trial court might view as creating a confusion on this point sufficiently great to warrant the conclusion that the jury's verdict of negligence was contrary to the great weight and clear preponderance of the evidence is as follows:

"*A.* I thought at that time that he [Bourgeois] would probably crash the gates and try to cross in front of us.

"*Q.* Was it at that point that the emergency [brake] was applied?

"*A.* That was when I made—I made the decision to put the train in emergency, yes."

Snodgrass' answer does not unequivocally state that he actually *set* the brake when he first realized Bourgeois was going too fast to stop. Snodgrass merely states when he *decided* to set the brake. This testimony, taken

"*Q.* How far away from your train?

"*A.* Well, I would say approximately between here and that table, about 12 feet maybe.

"*Q.* How long had it been sitting there?

"*A.* It had just had got there." (R. 429, 430, A. Ap. p. 130)

". . .

"*Q.* Now, I believe you testified earlier, Mr. Snodgrass, that you shut off your throttle and hit your brakes when you were at the north sidewalk at the crossing; is that right?

"*A.* In that general vicinity, yes.

"*Q.* And at that point, the Krolikowski car was on the tracks; is that correct?

"*A.* Yes." (R. 452, A. Ap. p. 136.)

4 "*Q.* And what did you say to the engineer?

"*A.* If I remember correctly, I says, 'That automobile struck the rear of the other car, and it's coming in front of us.'

". . .

"*Q.* And from the time that you made that—the comment that you said to the engineer, do you know if the train was put in emergency position?

"*A.* It seems to me that as soon as I hollered, he immediately put her in emergency brake application." (R. 444, 445, A. Ap. pp. 132, 133.)

in the context of Snodgrass' other clear statements that he set the brake after the Krolikowski car reached the track and taken in the context of the brakeman's corroborating testimony, leads us to conclude that there is no evidence that the emergency brake was set before the collision of the cars.

The record shows that the trial court erred in concluding that Snodgrass' testimony was confused. Accordingly we reverse that part of the trial court's order granting a new trial in the interest of justice.

*By the Court.*—That part of the order denying a directed verdict is affirmed; that part of the order granting a new trial in the interest of justice is reversed; cause remanded with directions to enter judgment in favor of the plaintiff in the amount of damages ordered by the trial court.

CONNOR T. HANSEN, J. *(dissenting)*. I respectfully dissent because it appears to me that this court has retried this case rather than subject it to judicial review. In reviewing an order granting a new trial this court must look for reasons to sustain the trial court's order. *Loomans v. Milwaukee Mut. Ins. Co.*, 38 Wis.2d 656, 662, 158 N.W.2d 318 (1968). Such an order should be reversed only for a clear abuse of discretion. *Hillstead v. Shaw,* 34 Wis.2d 643, 648, 150 N.W.2d 313 (1967). In other words, the trial court has to be wrong about the evidence or the law. *McCarthy v. Thompson,* 256 Wis. 113, 40 N.W.2d 560 (1949). Recently, in *Larry v. Commercial Union Ins. Co.,* 88 Wis.2d 728, 277 N.W.2d 821 (1979) we quoted the following statement by Justice BARNES from *Schlag v. Chicago, M. & St. P. R. Co.,* 152 Wis. 165, 169, 170, 139 N.W. 756 (1913):

". . . However, this court is very loath to interfere with the discretion to grant new trials that is vested in circuit judges. It is a power that should be courageously

and fearlessly exercised whenever a trial judge is convinced that to enter judgment on a verdict returned would result in a miscarriage of justice. It is very possible that this important power is used more sparingly than it should be. . . ."

In the instant case the trial court concluded that a new trial was necessary and gave a reasonable basis for that conclusion. Nevertheless, this court has gone beyond its scope of review to question the trial court's eminently reasonable evaluation of the evidence. This court asserts a strained view of the evidence as a basis for its conclusion that the verdict should be sustained.

The trial court granted a new trial in the interests of justice because it appeared that the only credible evidence to support the jury's verdict was the engineer's somewhat confused testimony. In an attempt to find some credible evidence to support the verdict the trial court concluded that the jury decided that the engineer was responsible for the emergency and therefore rejected the emergency doctrine. The trial court went on to explain that the preponderance of the evidence showed that an emergency situation existed and that a reasonable choice had been made. The trial court reached this conclusion after referring to case law which concerned the need for a new trial where the verdict is against the great weight and clear preponderance of the evidence. I submit that what the trial court actually did here, despite the fact that the order granted a new trial in the interests of justice, was grant a new trial because the evidence which supported the jury's finding of causal negligence on the part of the engineer was against the great weight and clear preponderance of the evidence. This conclusion is not merely a reasonable determination, it is the only sensible view of the evidence.

Clearly a finding of causal negligence can only be based on the inaction of the engineer in failing to blow the

horn before Bourgeois struck plaintiff's car. The majority opinion applies the emergency doctrine but concludes that the engineer was negligent because the ordinarily prudent person faced with this emergency would have sounded the horn. I question the soundness of this conclusion in view of the fact that the engineer, not unreasonably, thought Bourgeois was aware of the train. The lights were flashing, the bells were ringing and the gate was down. The time factor must also be considered in deciding whether or not the engineer was negligent. The trial court found that 1.96 seconds passed between the moment the engineer realized that Bourgeois was not going to stop and the moment Bourgeois struck plaintiff's car. The trial court then found that it would take .75 seconds for the engineer to activate the horn. I am not prepared to find a man negligent because he fails to make the ordinarily prudent person's choice in .75 seconds. That time period allows only for instinctive action, not choice. Certainly the engineer's testimony indicates that he was able to make decisions after he realized that Bourgeois was not going to stop. However, these deliberations obviously took place throughout the crucial two seconds, not within the first .75 second. This leads me to a second objection to the verdict and this court's decision. Even if one is able to get by the problem of concluding that the engineer was negligent, finding that negligence causal is impossible. Such a finding requires the trier-of-fact to carefully construct a chain of assumptions, each of which is so tenuously related to the evidence that together they lead to a conclusion that is at best speculative. This is not the type of conclusion upon which a verdict should rest and is certainly the type of conclusion that is against the great weight and clear preponderance of the evidence.

The verdict required the jury to make the following assumptions: First, that within .75 seconds the engineer

could not only have physically activated the horn but also have undergone the thought processes necessary to compel him to pull the horn. Second, that within .75 seconds Bourgeois, despite his intoxicated condition and the loud music he was listening to, would hear the train horn, comprehend its import and take appropriate action. Third, that within the remaining .46 seconds Bourgeois, despite his intoxicated condition and the wet road surface, would have been able to avoid colliding with the plaintiff's car. These assumptions are difficult to make because the time spans used by the trial court are based on normal driver and road conditions, unadjusted for intoxication or wet pavement. Furthermore, the total span of 1.96 seconds was computed from the evidence most favorable to the plaintiff, a necessary analysis for ruling on a motion for a directed verdict. There was also evidence that Bourgeois was going 40 miles per hour and was only 100 feet away from the tracks when the engineer realized that he wasn't going to stop. This evidence must be included in considering the great weight and clear preponderance of the evidence.

The majority chooses to find a man causally negligent for failing to make the correct choice in .75 seconds. This holding may have been arrived at through a process of legal reasoning but it is highly unrealistic and difficult to reconcile with common notions of justice.

I would affirm the order granting a new trial.

I am hereby authorized to state that Mr. Chief Justice BEILFUSS and Mr. Justice CALLOW join in this dissenting opinion.