Gustave Jeffrey TOTSKY, a/k/a G. Jeffrey Totsky and Kristine Totsky, Plaintiffs-Respondents-Petitioners,

v.

RITEWAY BUS SERVICE, INC., Sharon Y. Williams and National Continental Insurance Co., an Ohio Corporation, a part of the Progressive Insurance Group, Defendants-Appellants,

WISCONSIN PHYSICIANS SERVICE INSURANCE CORP., a Wisconsin Corporation and Quad/Med Claims, Quad/Graphics, Inc., Defendants,

MAXICARE HEALTH INSURANCE COMPANY, a California Corporation, Defendant-Respondent,

CITY OF MILWAUKEE and State Farm Mutual Automobile Ins., Respondents.

Supreme Court

No. 97–0530. *Oral argument October 12, 1999.—Decided March 28, 2000.*

2000 WI 29

(Also reported in 607 N.W.2d 637.)

For the plaintiffs-respondents-petitioners there were briefs by *Robert C. Angermeier, Mark J. Rogers* and *Angermeier & Rogers*, Milwaukee, and oral argument by *Mark J. Rogers*.

For the defendants-appellants there were briefs by *Vicki L. Arrowood* and *Kasdorf, Lewis & Swietlik, S.C.*, and *Emile H. Banks, Jr., Yolanda Y. McGowan* and *Emile Banks & Associates, LLC*, all of Milwaukee, and oral argument by *Emile H. Banks, Jr.*

For the respondent, City of Milwaukee, there was a brief by *Ellen H. Tangen*, assistant city attorney, with whom on the brief was *Grant F. Langley*, city attorney.

¶ 1. N. PATRICK CROOKS, J. G. Jeffrey Totsky and Kristine Totsky, the petitioners, seek review of a published decision of the court of appeals, *Totsky v. Riteway Bus Serv. Co.*, 220 Wis. 2d 889, 894, 584 N.W.2d 188 (Ct. App. 1998), which reversed a Milwaukee County Circuit Court judgment. The judgment vacated a jury verdict that found a Riteway school bus driver was not negligent in going through a stop sign, a violation of Wis. Stat. § 346.46(1)(1991–92).[1] The jury was instructed on the emergency doctrine as set forth in Wis JI—Civil 1105A. It apparently accepted the emergency doctrine in finding no negligence in the

---

[1] All subsequent references to the Wisconsin Statutes are to the 1991–92 text unless otherwise noted.

379

actions of the bus driver, Sharon Y. Williams, who skidded through the stop sign when the bus hit a patch of ice. In skidding through the stop sign, Williams' bus collided with Jeffrey Totsky's vehicle. After the jury found Williams was not negligent, the circuit court, the Honorable Michael W. Skwierawski presiding, entered a judgment in favor of the Totskys on their renewed motion for directed verdict and conditionally granted a new trial.

¶ 2. The court of appeals reversed, holding that "the emergency doctrine can apply [in a negligence per se action] if a violation of the safety statute is caused by a loss of management and control through no fault of the driver, presuming the other requirements for invoking the emergency doctrine are met." *Totsky*, 220 Wis. 2d at 903. The court of appeals also held that credible evidence supported the "application of the emergency doctrine in this case." *Id.* at 904. We affirm the court of appeals' decision. The emergency doctrine applies to a violation of Wis. Stat. § 346.46(1) under the facts of this case, because a violation of § 346.46(1) is concerned with an issue of management and control. We further hold that two of the subrogated parties in this case, the city of Milwaukee and Maxicare Health Insurance Corporation, were not required to file a separate petition for review to preserve their subrogated interests on appeal, because they stipulated to waive their rights to participate at trial and to be bound by the judgment. However, State Farm Mutual Automobile Insurance, which did not enter into such a stipulation, was required to file an individual petition for review to preserve on appeal its subrogated interest, which is separate from the Totskys' claim.

¶ 3.    This case revolves around an accident where a bus skidded through an intersection on ice and collided with another car. The accident occurred just before 7:00 a.m. on February 10, 1993, at the intersection of Morgan Avenue and 80th Street in the city of Milwaukee. Morgan Avenue is an arterial roadway and does not contain any stop signs where it intersects 80th Street. A stop sign controls the northbound lane of 80th Street. Jeffrey Totsky (Totsky) was driving to work heading east on Morgan Avenue. At that same time, Sharon Williams (Williams) was driving a Riteway school bus north on 80th Street.

¶ 4.    Williams began work that day at 6:00 a.m. Before leaving the bus yard, she checked the general condition of the bus, including the brakes, and was satisfied that the bus was working properly. Williams noticed that the roads looked damp, but she knew that some ice existed on the roads as well. She was on her first route to pick up children when she initially skidded. Her bus skidded a couple of times, but each time, she apparently could see the ice on the road before she encountered the skid. The first encounter on the ice caused the bus to slide to the side approximately one or two feet. The second skid was similarly minimal.

¶ 5.    Totsky noticed that the road looked wet as he left for work, but he did not skid before the accident or encounter slippery conditions. He also testified at the trial that the road did not look slippery near where the bus stopped after the accident; it just looked wet.

¶ 6.    Williams saw the stop sign for northbound traffic as she approached the intersection of 80th Street and Morgan Avenue. When she was approximately 100 feet from the stop sign, she began to apply her brakes. She estimated at trial that she was travel-

ling at about 12–14 miles per hour[2] when she began to apply the brakes, and that the road looked wet, not icy.[3] The bus began to skid when Williams braked. As the bus skidded, she pumped the brakes and tried to turn the wheel of the bus into the skid. However, she was unable to stop the bus. Robert Krenz, Riteway's expert, estimated that when Williams began to skid, the bus was travelling between 16–23 miles per hour, and struck the Totsky vehicle at a speed between 11–16 miles per hour.

¶ 7. The bus skidded completely through the parking lane and into the intersection. Totsky saw the bus skidding through the intersection and accelerated in an attempt to avoid a collision. The bus struck Totsky's vehicle on the right rear corner, denting the right rear fender. Upon impact, Totsky's vehicle went into a spin turning clockwise, only stopping when it struck a signpost broadside. Krenz estimated that Totsky was driving at 8–12 miles per hour when his vehicle hit the signpost.

¶ 8. When the bus hit the car, Totsky was knocked out of the shoulder harness into the passenger seat, but the lap belt still secured his hips and legs. He attempted to sit up and counter-steer out of the spin, but as the vehicle hit the curb and signpost, his head and body slammed into the left front door. Totsky almost immediately felt pain in his back, for which he later took painkillers and muscle relaxants. He ultimately completed three months of therapy, was treated by several doctors, and missed eight months of work.

[2] During a deposition, Williams testified that she was driving about 10–15 miles per hour. (R. at 89:12.)

[3] Williams apparently testified at trial that before the accident, she did not skid on any patches of the road that merely looked wet.

¶ 9. Williams had picked up two[4] children prior to the accident, but neither Williams nor the children was injured during the collision.

¶ 10. The Totskys sued Riteway. Before the trial, both Maxicare Health Insurance Corporation (Maxicare) and the city of Milwaukee waived their right to participate at trial. However, State Farm Mutual Automobile Insurance (State Farm) did not waive its right to participate at trial.

¶ 11. In November 1996, the case was tried to a jury. At the close of the evidence, the Totskys moved for a directed verdict on the issue of Williams' negligence. The court took the motion under advisement, and permitted the case to go to the jury.

¶ 12. Among the jury instructions given were Wisconsin Civil Jury Instructions 1105—Management and Control, 1105A—Emergency Doctrine, 1280—Skidding, and 1055—Lookout. The first question of the special verdict asked: "Was Sharon Williams negligent in the operation of her vehicle on February 10, 1993?" The jury responded "no." The jury also responded "no" to the third question: "Was G. Jeffrey Totsky negligent in the operation of his vehicle on February 10, 1993?" The jury thought that the following sums of money would reasonably compensate Totsky for his damages: $37,000 for past medical and hospital expenses; $60,000 for future medical and hospital expenses; $20,324 for past loss of earnings; $100,000 for loss of future earning capacity; and $50,000 for past and future pain, suffering, and disability. The jury further determined that $10,000 would reasonably

---

[4] There seems to be some discrepancy as to how many children were on the bus. The accident report states there were two, but Williams testified at trial that there were three.

compensate Kristine Totsky for the loss of consortium sustained by her.

¶ 13. Since the jury returned a verdict that neither Williams nor Totsky was negligent, the Totskys renewed their motion for a directed verdict. They also moved in the alternative for a new trial in the interest of justice and claimed that the verdict was against the weight of the evidence. Judge Skwierawski granted both motions.

¶ 14. The court granted the motion for a directed verdict for several reasons. Williams was negligent per se, the court found, since she violated a safety statute. Moreover, the court found that the emergency doctrine could not excuse Williams' negligence as this case did not solely present an issue of management and control. Finally, she was negligent as a matter of law because her excessive speed produced the emergency that she encountered, and therefore, the emergency doctrine did not apply.

¶ 15. The circuit court also conditionally granted the motion for a new trial in the event that on appeal, the court's judgment would be reversed or vacated.

¶ 16. The court of appeals reversed both of the circuit court's rulings. *Totsky*, 220 Wis. 2d at 894. The emergency doctrine can apply to the violation of a safety statute, which results in negligence per se, the court of appeals decided. *Id.* at 899. For support, it looked to *La Vallie v. General Ins. Co. of Am.*, 17 Wis. 2d 522, 117 N.W.2d 703 (1962), in which this court applied the emergency doctrine to a violation of a safety statute. The court of appeals explained that *La Vallie* stands for the proposition that if a driver's loss of management and control causes a violation of a safety statute, the emergency doctrine can apply, assuming

the other prerequisites for the emergency doctrine also apply. *Totsky*, 220 Wis. 2d at 903.

¶ 17. The court of appeals also distinguished *Leckwee v. Gibson*, 90 Wis. 2d 275, 280 N.W.2d 186 (1979), a case the petitioners rely upon greatly. That case arguably precludes the use of the emergency doctrine in cases of a safety statute violation. *Totsky*, 220 Wis. 2d at 903 n.3. *Leckwee* was inapposite, the court of appeals recognized, because in *Leckwee*, the court did not even address the emergency doctrine issue, since it was not raised at the circuit court level. *Id.* (citing *Leckwee*, 90 Wis. 2d at 289).

¶ 18. The court of appeals concluded that here credible evidence supports the application of the emergency doctrine. *Totsky*, 220 Wis. 2d at 904. The alleged negligence related to management and control. *Id.* at 906. Credible evidence also supported the other two requirements for application of the emergency doctrine: the time in which Williams needed to act was "short enough to preclude action sufficient to avoid the accident," and she was free of negligence in causing the accident because she was unable to see the icy patch that made the bus skid. *Id.*

¶ 19. The court of appeals also addressed the issue of negligence as a matter of law. The circuit court had found Williams negligent as a matter of law since "she was going too fast and in view of the fact that she knew there was a danger that morning that ice existed on the roadways. . . ." *Id.* at 905. This finding was in error, the court of appeals stated, because a reasonable jury could have found, according to credible evidence, that Williams was driving between 10 and 16 miles per hour when she hit the ice patch that caused the skid. *Id.* Her speed was not excessive and, therefore, she was not negligent as a matter of law. *Id.*

¶ 20. The Totskys petitioned this court for review of the court of appeals' decision. The three subrogated parties, the city of Milwaukee, Maxicare, and State Farm, did not join the petition. Further, none of the subrogees filed a timely petition of their own. The Respondents therefore filed a motion to dismiss the subrogees as parties under Wis. Stat. § 808.10(1997–98) and Wis. Stat. § (Rule) 809.62(1997–98), claiming that the subrogees waived their right to a review of the claims. The subrogees did not respond to the Respondents' motion. Finally, the subrogees only filed briefs in opposition to the motion to dismiss when they were warned that the motion would be summarily granted absent a failure to respond.[5]

## II.

¶ 21. The first issue we address is whether the emergency doctrine can apply to a violation of Wis. Stat. § 346.46(1), the statutory section requiring vehicles to stop at stop signs. Interpretation of Wis. Stat. § 346.46(1) as it relates to the emergency doctrine presents a question of law. *Burnett v. Hill*, 207 Wis. 2d 110, 118, 557 N.W.2d 800 (1997)(stating that statutory interpretation is a question of law). Questions of law

---

[5] The letter from the Office of the Supreme Court Clerk was sent to the subrogees' attorneys on April 29, 1999, and specifically stated:

A motion to dismiss the City of Milwaukee, State Farm Mutual Automobile Insurance Company and Maxicare Health Insurance Corporation from this review has been filed but not responded to by any of the named entities. Failure to file a response to this motion by Monday, May 10, 1999 will result in this pending motion being summarily granted.

are reviewed independently without deference to a circuit court's decision. *Id.*

¶ 22.   The emergency doctrine excuses an individual from negligence. *See Seif v. Turowski*, 49 Wis. 2d 15, 23, 181 N.W.2d 388 (1970). *See also Geis v. Hirth*, 32 Wis. 2d 580, 588, 146 N.W.2d 459 (1966). Three requirements must be met for the emergency doctrine to apply:

> First, the party seeking the benefits of the emergency doctrine must be free from negligence which contributed to the creation of the emergency. Second, the time element in which action is required must be short enough to preclude deliberate and intelligent choice of action. Third, the element of negligence being inquired into must concern management and control before the emergency doctrine can apply.

*Gage v. Seal*, 36 Wis. 2d 661, 664, 154 N.W.2d 354 (1967)(quoting *Geis v. Hirth*, 32 Wis. 2d 580, 586, 146 N.W.2d 459 (1966)).

¶ 23.   The rationale underlying the emergency doctrine "is that a person faced with an emergency which his conduct did not create or help to create is not guilty of negligence in the methods he chose, or failed to choose, to avoid the threatened disaster if he is compelled to act instantly without time for reflection." *Seif*, 49 Wis. 2d at 23 (citing *Papacosta v. Papacosta*, 2 Wis. 2d 175, 85 N.W.2d 790 (1957)). Stated another way: "[t]he application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the *particular circumstances* to allow an intelli-

gent or deliberate choice of action in response to the realization of danger. . . ." *Gage*, 36 Wis. 2d at 664 (quoting *Cook v. Thomas*, 25 Wis. 2d 467, 471, 131 N.W.2d 299 (1964)).

¶ 24.   Before discussing why the emergency doctrine can apply to a violation of Wis. Stat. § 346.46, we first note that the stop sign statute is a safety statute, the violation of which constitutes negligence per se. "A safety statute is a legislative enactment designed to protect a specified class of persons from a particular type of harm." *Betchkal v. Willis*, 127 Wis. 2d 177, 184, 378 N.W.2d 684 (1985)(quoting *Leahy v. Kenosha Memorial Hospital*, 118 Wis. 2d 441, 449, 348 N.W.2d 607 (Ct. App. 1984)). Wisconsin Stat. § 346.46 is a safety statute. *See* Wis JI—Civil 1325—Stop at Stop Signs, and 1325A—Stop at Stop Signs (Alternate)(the headings of both jury instructions refer to the stop sign statute as a safety statute).

¶ 25.   The violation of this safety statute constitutes negligence per se. Negligence per se arises from the violation of a safety statute if three requirements are met: 1) the safety statute was designed to prevent the harm inflicted, 2) the person injured was in a protected class, and 3) the legislature has expressed its intent that the statutory section serve as a basis for the imposition of civil liability. *Betchkal*, 127 Wis. 2d at 184 (citing *Walker v. Bignell*, 100 Wis. 2d 256, 268–69, 301 N.W.2d 447, 454, 455 (1981)). First, Wis. Stat. § 346.36(1) was designed to prevent collisions resulting from vehicles that do not stop and yield to traffic having the right-of-way. Second, the statute was created to protect highway users, not merely to regulate the flow of traffic. The protected class is "vehicles which have

entered or are approaching the intersection upon a highway which is not controlled by an official stop sign or traffic signal." Wis. Stat. § 346.46(1). Totsky was within the class of persons to be protected because his vehicle was on an arterial highway that did not contain a stop sign. Finally, the legislature's intent that § 346.46 serve as a basis for civil liability is implied by the language of the statute itself. *See Walker*, 100 Wis. 2d at 271 (stating that "requisite intent may be supplied by necessary implication from the language of the statute.") *See also Leahy*, 118 Wis. 2d at 450 (recognizing that legislative intent to impose civil liability may be stated directly or by implication in a statute). Section 346.46(1)'s language "is such a clear expression of concern for the safety of highway users, committed so plainly to the responsibility" of the operators of vehicles approaching stop signs, that we conclude that the legislature intended to impose civil liability on those individuals who violate the statute. *Cf. Walker*, 100 Wis. 2d at 271.

¶ 26. We agree with the court of appeals that the violation of Wis. Stat. § 346.46(1) constitutes negligence per se, and that such violation can be excused through application of the emergency doctrine. We agree with the court of appeals' analysis for several reasons.

¶ 27. First, the court of appeals correctly relied upon *La Vallie* for the proposition that when the emergency doctrine applies it excuses a violation of a safety statute, thus precluding a finding of negligence. In *La Vallie*, the defendant's car skidded into another car after it hit a patch of snow and ice on the highway, but "[t]he jury absolved the plaintiff of negligence." 17 Wis. 2d at 525. This court found that the "jury was properly

instructed on the emergency doctrine," even though the defendant's alleged violations pertained to two safety statutes. *Id.* at 527. In holding that the jury was properly instructed on the emergency doctrine, we stated that "the emergency doctrine would excuse any alleged violation of sec. 346.34(1) [proscribing a change of direct course upon a roadway], since the change of direct course occurred at a time when the La Vallie car was out of control through no fault of the driver." *Id.* This statement not only demonstrates that the emergency doctrine may apply in a negligence per se case, but also that management and control was at issue in *La Vallie*.

¶ 28.    The Totskys argue that *La Vallie* does not control this issue. We find the Totskys' arguments unpersuasive. The Totskys attempt to distinguish *La Vallie* on the basis that *La Vallie* dealt with the issue of position on the highway, which they contend merely creates an inference of negligence. (Pet. Br. at 15)(citing *Geis*, 32 Wis. 2d at 591). In contrast, they argue that the duty to stop at a stop sign is absolute. (Pet. Br. at 15)(citing Wis JI—Civil 1325). However, the Totskys misconstrue the language in *Geis* that they rely upon. In *Geis*, 32 Wis. 2d at 591, we stated that a party's "position on the wrong side of the road created an inference of negligence unless it was shown that this was beyond her control." *See also Kempfer v. Bois*, 255 Wis. 312, 314, 38 N.W.2d 483 (1949), and *Zeinemann v. Gasser*, 251 Wis. 238, 243, 29 N.W.2d 49 (1947). While this inference of negligence may not exactly equate with negligence per se, the inference establishes a prima facie case of negligence, which cannot be rebutted without a showing of circumstances beyond a party's control; in other words, an emergency. As such, *La*

*Vallie* is persuasive authority in this case. A valid distinction between a so-called inference of negligence and negligence per se cannot be drawn under these circumstances.[6]

¶ 29.  Second, we agree with the court of appeals that the Restatement (Second) of Torts permits the application of the emergency doctrine, even though a safety statute is involved. While we recognize that this issue is a matter of statutory interpretation, we find the Restatement (Second) of Torts § 288A persuasive because it demonstrates that emergency is a generally accepted excuse to negligence per se. The Restatement (Second) of Torts § 288A, Excused Violations, (1965) states:

> (1)  An excused violation of a legislative enactment or an administrative regulation is not negligence. .

---

[6] It appears that earlier Wisconsin case law does not draw a clear distinction between an inference of negligence and negligence per se. The Oregon Supreme Court appears to use the term presumption of negligence in discussing negligence per se situations. However, the Oregon Supreme Court's treatment of the presumption in such situations, and this court's treatment of an inference of negligence in similar situations appears consistent. *Compare Kempfer v. Bois*, 255 Wis. 312, 314, 38 N.W.2d 483 (1949), *and Zeinemann v. Gasser*, 251 Wis. 238, 243, 29 N.W.2d 49 (1947), *with Weitzel v. Wingard*, 546 P.2d 121, 123 (Or. 1976)(stating that "the violation of a motor vehicle statute creates a presumption of negligence," but that if a "party produces evidence which the court determines raises a question of fact whether the party acted reasonably, despite violation of the statute, then the question of the party's negligence is one for the jury.") For a thorough discussion on Oregon negligence law, refer to Caroline Forell, *Statutory Torts, Statutory Duty Actions, and Negligence Per Se: What's the Difference*, 77 Or. L. Rev. 497 (1998).

(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others.

Restatement (Second) of Torts § 288A (1965). Section 288A applies to actions where there is a violation of a safety statute, because it specifically refers to "legislative enactment." Restatement (Second) § 288A(1). Comment b explains that if a person's action is excused, the person was not negligent in the first place: "[i]n many of the situations in which the conduct of the actor is excused, such conduct is simply not a violation of the statute, ordinance, or regulation, for any purpose." Restatement (Second) of Torts § 288A(1) cmt. b. *See also* Harper, James & Gray, *The Law of Torts*, § 17.6 at 641 (2d ed. 1986) (stating that if an excuse applies to a violation of a safety statute and, thus, otherwise would be negligence per se, "it means that violation of a statutory standard is negligence per se in a civil case only in the absence of evidence tending to establish some excuse that the court will recognize.")

¶ 30. In particular, the Comment on Clause (d) accepts the use of the emergency doctrine. It addresses how the emergency doctrine applies to a violation of a statute resulting in negligence per se. It states that "[a]s in other cases of negligence. . ., the violation of an enactment or regulation will ordinarily be excused

392

when the actor is confronted by an emergency which is not caused by his [or her] own misconduct." Restatement (Second) of Torts § 288A cmt. on clause (d) (1965). We find in this comment an express acknowledgment of the emergency doctrine's use in regard to a violation of a statute resulting in negligence per se.

¶ 31. Finally, other leading authorities in tort law recognize the applicability of the emergency doctrine to a statute involving negligence per se.[7] Prosser and Keeton note that violation of a statute in which no excuse is permitted really is strict liability.[8] Prosser & Keeton, *The Law of Torts*, § 36 at 227 (5th ed. 1984).

[7] We acknowledge that another approach that might be taken is to eliminate the emergency doctrine, and to use a traditional negligence inquiry, in which a jury would assess negligence according to duty, breach, cause, and harm. Harper, James & Gray, *The Law of Torts*, § 17.6, 619–20 (2d ed. 1986) (stating that "[i]n a substantial number of jurisdictions such a violation is held to be evidence of negligence to be weighed by the jury.") Under the alternate approach, the most significant inquiries would seem to involve breach and causation. It appears that the result in this case would be the same under either approach, however. We disagree with the concurring opinion that suggests elimination of the doctrines of negligence per se and emergency. Such an approach would abandon a significant body of precedent in Wisconsin without sufficient justification.

[8] Prosser and Keeton appear to regard a violation of a criminal statute resulting in negligence per se as strict liability if no excuse is permitted:

> It is entirely possible that a criminal statute imposing no more than a small fine may be regarded as imposing an absolute duty, for the violation of which there is no recognized excuse, even in a tort action for large damages. But this is a matter of statutory interpretation. Moreover, a court may see fit to decide that a strict liability in tort should be imposed on a defendant in a situation where the legislature has deemed it to be in the public interest to

Harper, James, and Gray recognize the meritorious objections to the "Draconian" nature of negligence per se. Harper, James & Gray, *The Law of Torts*, § 17.6, 626 (2d ed. 1986). They point out that most jurisdictions temper negligence per se by allowing some consideration of excuse, such as emergency, or lack of control. *Id.* at 637–38. While this case is not based on policy considerations, the observations these authorities make are valid. We agree that negligence per se, by itself, is a draconian measure that can lead to unduly harsh and unfair results, particularly when a statute does not even call for civil liability. The emergency doctrine balances the obvious intended benefits of the safety statutes, with the desire not to punish an individual whose violation of a safety statute was due to no fault of his or her own.

¶ 32.   Since we are faced with an issue of statutory interpretation, it is necessary for us to construe the language in Wis. Stat. § 346.46. We interpret the

impose some kind of strict liability by way of the imposition of a small fine.

The legislature, within its constitutional powers, may see fit to place the burden of injuries "upon those who can measurably control their causes, instead of upon those who are in the main helpless in that regard." In such a case the defendant may become liable on the mere basis of his violation of the statute. No excuse is recognized, and neither reasonable ignorance nor all proper care will avoid liability. Such a statute falls properly under the head of strict liability, rather than any basis of negligence—although the courts not infrequently continue, out of habit, to speak of the violation as "negligence per se."

Prosser & Keeton, *The Law of Torts*, § 36 at 227 (5th ed. 1984) (citation omitted). The criminal statute example is analogous to the traffic regulation situation at issue in this case. We wish to avoid, in effect, converting a safety statute violation into strict liability by failing to recognize any excuse.

statute's language to support the applicability of the emergency doctrine as an excuse for the following reasons. The emergency doctrine may apply even though the statute uses mandatory language such as "shall." Wisconsin Stat. § 346.05, which also uses mandatory language, has been construed to permit the emergency doctrine's applicability. *Geis*, 32 Wis. 2d at 591.

¶ 33. Although the statute's language is mandatory, it already contains two exceptions. These two exceptions indicate that the statute is not immutable. Again, we look to § 346.05 as an example. In that statute, several exceptions have been listed. Even though those exceptions were already listed in the statute, this court permitted the use of the emergency doctrine. *La Vallie*, 17 Wis. 2d at 527. In sum, the language of Wis. Stat. § 346.46 supports our conclusion that the emergency doctrine may apply as an excuse.

¶ 34. We now examine the applicability of the emergency doctrine in this case. The emergency doctrine can apply to the violation of a safety statute, excusing what otherwise would be negligence per se, but only in situations where the three required tests of emergency are met. At issue in this case is the third test: whether the element of negligence inquired into concerns management and control. Precisely at issue is to what extent must the negligence concern management and control for the emergency doctrine to apply. We hold that management and control must be involved in the negligence inquiry, but it does not have to be the only standard of care at issue in a case.[9] In

---

[9] By standards of care we mean the duties that comprise the negligence inquiry. Sometimes this court has characterized management and control as a duty separate from other duties. *See e.g., Tombal v. Farmers Ins. Exchange*, 62 Wis. 2d 64, 71,

other words, the emergency doctrine can absolve negligence as to management and control, even if the total negligence inquiry involves more standards of care than just management and control.[10] *LaVallie*, 17 Wis. 2d at 527 (stating that if a violation of a safety statute is caused by a loss of management and control, without fault on the part of the driver, then the emergency doctrine can apply).

¶ 35.    First, it is important to define what exactly is meant by "management and control." Management and control relates to a person's manner of driving. *Schmit v. Sekach*, 29 Wis. 2d 281, 289, 139 N.W.2d 88 (1966). The emergency instruction states that if a "driver is compelled to act instantly to avoid collision, the driver is not negligent if he or she makes such a choice of action or inaction as an ordinarily prudent person might make if placed in the same position." Wis JI—Civil 1105A, Management and Control—Emergency. The instruction pertaining to management and control further explains that "[a] driver must exercise ordinary care to keep his or her vehicle under proper management and control so that when danger appears, the driver may stop the vehicle, reduce speed, change course, or take other proper means to avoid injury or damage." Wis JI—Civil 1105,

214 N.W.2d 291 (1974). At other times this court has characterized management and control as part of, or involved in, another duty. *See e.g., Simon v. Van de Hey*, 269 Wis. 50, 57, 68 N.W.2d 529 (1955).

[10] The Respondents also argue alternatively that the Plaintiffs waived their right to contest the jury's verdict, and that the skidding instruction relieved Williams of negligence. (Resp. Br. at 15–21.) We decline to address these arguments because they are not dispositive in this case.

Management and Control. Management and control, therefore, is the choice of action or inaction that a person makes regarding his or her vehicle. *Schmit*, 29 Wis. 2d at 289. *See also Edeler v. O'Brien*, 38 Wis. 2d 691, 699, 158 N.W.2d 301 (1968).

¶ 36.  A driver has three duties in regard to a stop sign: a driver must stop, then look, and then yield to traffic that has the right-of-way. *Sailing v. Wallestad*, 32 Wis. 2d 435, 441, 145 N.W.2d 725 (1966)(quoting *Schlueter v. Grady*, 20 Wis. 2d 546, 553–55, 123 N.W.2d 458 (1963)). Management and control is involved in the duties of both stopping and yielding. Wisconsin Jury Instruction—Civil 1105, which the jury considered, specifically refers to stopping as a proper means to avoid injury or damage. This court has also determined that applying brakes to a vehicle, which is integral to the ability to stop, is part of proper management. *Simon v. Van de Hey*, 269 Wis. 50, 57, 68 N.W.2d 529 (1955). As such, stopping is a method by which a driver can manage and control a vehicle.

¶ 37.  Management and control is similarly involved in the duty to yield. *Sailing* additionally discussed the involvement of management and control in the duty to yield. In that case, the defendant failed to yield at a yield sign and hit a vehicle travelling on the intersecting arterial highway. *Sailing*, 32 Wis. 2d at 436–37. This court stated that the degree of control required at a yield sign is less than at a stop sign. *Id.* at 442. By this statement, the court indicated that control to some extent is involved in the duty to yield. Even so, the court did ultimately state that it was proper for the circuit court not to instruct on management and control since the "evidence did not reveal sufficient

reaction time available for there to be an issue of management and control." *Id.* at 445.

¶ 38. Management and control is not involved, however, in the duty of lookout. *See Tombal v. Farmers Ins. Exchange*, 62 Wis. 2d 64, 71, 214 N.W.2d 291 (1974)(wherein the court stated that "Mrs. Tombal did make an efficient lookout and that she was not negligent as to speed and, further, that she was excused from possible negligence as to management and control by virtue of the emergency doctrine.") Even though obeying a stop sign includes more duties than those involving management and control, the emergency doctrine can still apply to the duties that do involve management and control. For instance, in *Tombal*, this court applied the emergency doctrine to management and control, but not lookout or speed, in regard to "[the] statutory duty to use caution when entering an intersection against a flashing yellow traffic control light." *Id.* Similarly, in *Lievrouw v. Roth*, 157 Wis. 2d 332, 352–53, 459 N.W.2d 850 (1990), the court of appeals found that the emergency doctrine was correctly applied in a case in which both speed and management and control were at issue. The court specifically rejected the defendants' argument that because speed was at issue in addition to management and control, the emergency doctrine could not apply at all. *Id.* at 353. In its statement, "a driver may fail to exercise ordinary care with respect to both speed *and* management and control," the court implied that even though additional duties may be at issue in a case, if management and control is involved, the emergency doctrine could apply to the management and control portion of the negligence inquiry. *Id.* Therefore, if management and control is at issue in a case, the emergency doctrine

may apply, even if other duties are also at issue. Of course, the emergency doctrine can only apply to the management and control portion of the negligence inquiry. Wis JI—Civil 1105A (stating that the "emergency rule is to be considered by [a juror] only with respect to [a juror's] consideration of negligence as to management and control.")

¶ 39.   Since management and control is involved in at least two of the duties pertaining to obeying a stop sign, it is proper for a jury to be instructed on the emergency doctrine, if the other two requirements for application of the doctrine are met. In this case, both of those requirements were satisfied.

¶ 40.   First, Williams did not act negligently, thereby causing the emergency. The speed at which she was travelling before the skid, approximately 16–23 miles per hour, was under the 25 miles per hour speed limit, certainly a reasonable speed under the conditions observable by her. Moreover, the ice upon which Williams skidded was not observable because that part of the road merely looked wet to her, and to Totsky, not icy.

¶ 41.   Second, whether Williams had time to take deliberate action was a question for the jury. If the time frame in which a person must act is too short for an individual to take deliberate action, then a court can determine that there was an emergency as a matter of law. *Schumacher v. Klabunde*, 19 Wis. 2d 83, 88, 119 N.W.2d 457 (1963). If, however, the time frame "was such that the confronted driver did have time for considered action," then there is no emergency as a matter of law. *Id.* The "circumstances surrounding the accident and the driver's opportunity to respond to the danger must be considered" in determining whether an

individual is entitled to the emergency doctrine as a matter of law, or whether the issue should proceed to the jury. *Seif*, 49 Wis. 2d at 24.

¶ 42.   In this case, it appears that the time frame was not so short as a matter of law to preclude deliberate action. However, the time frame was still short enough to submit the issue to the jury. Krenz testified that the bus travelled the 100 feet from the beginning of the skid to the intersection in approximately four to five seconds. Under the circumstances surrounding the accident, we conclude that the issue of her opportunity to respond and to take deliberate action was appropriately submitted to the jury.

¶ 43.   In summary, it was proper for the jury to consider the question of Williams' negligence in light of the emergency doctrine. The jury could reasonably conclude that Williams did not create the emergency by any negligence of her own since the ice the bus skidded on was not observable and she traveled at a reasonable speed. Moreover, the time element could reasonably be found to be short enough to preclude her deliberate reaction, and the negligence alleged concerned, at least in part, management and control.

¶ 44.   Wisconsin Stat. § 805.14(1) provides the standard for a challenge to the sufficiency of the evidence:

> No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

A circuit court should only grant a motion for a directed verdict against a party with extreme caution. To grant such a motion, both a circuit court and an appellate court, including this court, must view the evidence in a manner most favorable to the party against whom the directed verdict is taken. *Tombal*, 62 Wis. 2d at 68–69 (citations omitted). A motion for a directed verdict should only be granted if the " 'court is satisfied that, considering all credible evidence in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such a party.' " *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753 (1995)(quoting § 805.14(1)). "If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury." *Tombal*, 62 Wis. 2d at 68 (citing *Kielich v. Whittaker*, 183 Wis. 470, 198 N.W. 270 (1924)).

¶ 45. Viewing the evidence in the light most favorable to Williams, we conclude that credible evidence supported the application of the emergency doctrine, and it was proper to instruct the jury about the doctrine. As such, the circuit court erred in directing the verdict in favor of the Totskys, since the circuit court proceeded on an erroneous view of the law in regard to the emergency doctrine and its applicability in this case.

¶ 46. The circuit court also erred in conditionally ordering a new trial. Wisconsin Stat. § 805.15(1) sets forth the grounds for granting a motion for a new trial. It states that a circuit court may set aside a verdict and grant a new trial when there are "errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate dam-

ages, or because of newly-discovered evidence, or in the interests of justice." § 805.15(1). It is true that "where the trial court has awarded a new trial in the interest of justice, this court will affirm unless there is a clear showing of abuse of discretion." *Bartell v. Luedtke*, 52 Wis. 2d 372, 377, 190 N.W.2d 145 (1971). Moreover, we have recognized that

> the supreme court usually defers to the trial court's decision because of the trial court's opportunity to observe the trial and evaluate the evidence, and the order is highly discretionary. If one ground relied upon by the trial court in granting a new trial in the interest of justice is correct, this is sufficient to affirm the order of the trial court.

*Id.* (quoting *Hillstead v. Shaw*, 34 Wis. 2d 643, 648, 150 N.W.2d 313 (1967)). However, in this case, we conclude that there was clearly an erroneous exercise of discretion by the circuit court in conditionally ordering a new trial. As the court of appeals stated, the circuit court erroneously exercised its discretion because it erred in its finding that the emergency doctrine never applies to a violation of a safety statute resulting in negligence per se. As we have determined, the emergency doctrine can apply to a violation of Wis. Stat. § 346.46(1), and therefore, the circuit court erred as a matter of law.

¶ 47.  We also agree with the court of appeals that the circuit court erred when it granted a new trial on the basis of Williams' speed on icy roads. This finding was in error, the court of appeals stated, because a reasonable jury could have found, according to credible evidence that Williams' speed was not excessive. Therefore, she was not negligent as a matter of law. We agree with the court of appeals' conclusion.

¶ 48. We next address whether the subrogees have a duty to separately petition this court for review to preserve their subrogation claim. This issue presents a question of law, which we also review *de novo*. *Schulte v. Frazin*, 176 Wis. 2d 622, 628, 500 N.W.2d 305 (1993). We hold that to preserve their claims, the subrogees must separately petition this court for review, unless they have entered into a stipulation to waive their rights to participate at trial and agree to be bound by the judgment.

¶ 49. "Subrogation rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent it has paid and be subject to the defenses of the alleged wrongdoer." *Employers Ins. Of Wausau v. Sheedy*, 42 Wis. 2d 161, 170, 166 N.W.2d 220 (1969). Subrogation does not create a new and independent cause of action. *Wilmot v. Racine County*, 136 Wis. 2d 57, 63, 400 N.W.2d 917 (1987). However, the general rule is that a subrogation interest represents a distinct and separate part of a single cause of action. *Id.* at 61. *See also Giese v. Montgomery Ward, Inc.*, 111 Wis. 2d 392, 404, 331 N.W.2d 585 (1983); *Wilmot*, 136 Wis. 2d at 64. This is even though a subrogee and a subrogor are subject to the same procedural rules. *Sampson v. Logue*, 184 Wis. 2d 20, 29, 515 N.W.2d 917 (Ct. App. 1994). The subrogor's right to be made whole is superior to the right of the subrogee to recover on its separate part of a claim. *Schulte*, 176 Wis. 2d at 637. Therefore, even if an insured and a tortfeasor settle a claim, the subrogated party's claim is left unsatisfied if no provision for the subrogated party is made as part of the settlement. *Ritt v. Dental*

*Care Assoc.*, 199 Wis. 2d 48, 77, 543 N.W.2d 852 (Ct. App. 1995); *Muchow v. Goding*, 198 Wis. 2d 609, 633, 544 N.W.2d 218 (Ct. App. 1995).

¶ 50. The subrogees' interests in this case are separate. Maxicare stated in its counterclaim and cross-claim that "any settlement between Plaintiffs and Defendants prior to verdict, will only extinguish the claim owned by the Plaintiff. Such settlement will not extinguish the *separate, independent* cause of action owned by Maxicare Health Insurance Company." (R. at 4:2)(Emphasis added.) State Farm and the city of Milwaukee also attempted to preserve their separate subrogation interests. They both requested that in the event of a settlement between the Totskys and Riteway, a hearing would be held to determine whether State Farm and the city of Milwaukee could seek satisfaction of their claims.

¶ 51. Wisconsin Stat. § (Rule) 809.62 (1997–98), which governs the criteria for petitions for review, does not expressly exclude from its scope petitions for review by subrogated parties. The statute's inquiry centers on whether the decision below was adverse. Section 809.62 (stating that "a party may file. . .for review of an adverse decision. . . ."). In *Bortz v. Merrimac Mut. Ins. Co.*, 92 Wis. 2d 865, 869, 286 N.W.2d 16 (Ct. App. 1979), a subrogee's appeal was held not to be dependent on other parties' appeals. Moreover, Wis. Stat. § 803.03(2)(b)(1997–98) lists the options that a joined party may take in litigation. A party must exercise one of those statutory options to maintain the viability of a claim. *Sampson* 184 Wis. 2d at 27; *Anderson v. Garber*, 160 Wis. 2d 389, 399, 466 N.W.2d 221 (Ct. App. 1991). Thus, a subrogated party's (subrogee's)

interests on appeal are not preserved as part of a subrogor's appeal.

¶ 52.   Both the city of Milwaukee and Maxicare stipulated to waive their rights to participate at trial and agreed to be bound by the judgment. Because a waiver is binding unless a party withdraws the waiver upon timely motion, *see* Wis. Stat. § 803.03(2)(b)(1997–98), it appears that the city of Milwaukee and Maxicare's stipulations have survived on appeal, since they are still bound by their stipulation. *Wyandotte Chemicals Corp. v. Royal Elec. Mfg. Co., Inc.*, 66 Wis. 2d 577, 589, 225 N.W.2d 648 (1975) (stating that stipulations made at trial are binding on appeal). Riteway did expressly agree to the stipulations made before trial, and therefore, must be bound by its stipulations with the city of Milwaukee and Maxicare. However, no stipulation was entered between Riteway and State Farm. As such, State Farm's subrogated claim will be dismissed.

### III.

¶ 53.   We conclude that the emergency doctrine applies to a violation of Wis. Stat. § 346.46(1) under the facts of this case, because a violation of Wis. Stat. § 346.46(1) is concerned with an issue of management and control. We further conclude that two of the subrogated parties in this case, the city of Milwaukee and Maxicare, are not required to file a separate petition for review to preserve their subrogated interests on appeal, because they stipulated to waive their rights to participate at trial and agreed to be bound by the judgment. However, State Farm, which did not enter into such a stipulation, was required to file a separate petition for review to preserve its subrogated interest on

appeal, because its subrogated interest is separate from the Totskys' claim.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 54.  WILLIAM A. BABLITCH, J. *(concurring)*. Historically, this court has carefully pruned the deadwood from various tort doctrines to ensure that justice is done. We abolished the zone of danger rule when negligent infliction of emotional distress is alleged in favor of traditional elements of tort action in negligence. *Bowen v. Lumbermens Mut. Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994). We abolished the distinction between the duty owed to licensees and invitees. *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975). We abolished special rules of duty in automobile host-guest cases. *McConville v. State Farm Mut. Auto. Ins. Co.*, 15 Wis. 2d 374, 113 N.W.2d 14 (1962). The time has now come to abolish the emergency doctrine.

¶ 55.  In this case the majority opinion valiantly forges through the doctrinal jungle created by the application of the emergency doctrine when negligence is alleged. I respectfully disagree with taking this course. The emergency doctrine obfuscates clear thinking about the precise question to be answered in a negligence action. Because the emergency doctrine jeopardizes justice, it has no place in our tort law.

¶ 56.  The confusion generated by the emergency doctrine arises under claims of negligence per se, as in the present case, as well as when common law negligence is alleged. The doctrine should be abolished with respect to both.

## Common Law Negligence

¶ 57.  When common law negligence is at issue, the emergency doctrine does not change the standard of care required of the party whose conduct is in question. As this court has already stated:

> The test of negligence in the face of an emergency is identical to that used in a nonemergency situation, *i.e.*, was the action or inaction conformable with that expected of the reasonable or prudent man placed in like circumstances. In the emergency situation, the conduct can be mistaken and yet prudent. Nevertheless, the prudent-reasonable-man test is applicable at all times prior to the emergency, during it, and after it.

*Zillmer v. Miglautsch*, 35 Wis. 2d 691, 704, 151 N.W.2d 741 (1967)(internal quotations and citations omitted). In the words of Professor Richard V. Campbell, of the University of Wisconsin Law School, the emergency doctrine is nothing more than "orthodox negligence doctrine" and "simply says that you are negligent if you are negligent." Professor Richard V. Campbell, *Recent Developments of Tort Law in Wisconsin*, Institute of Continuing Legal Education, CLEW, p. 34–35 (1969). Other courts and commentators echo this standard.[1] As the Supreme Court of Kansas stated, "[t]he doctrine

---

[1] W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 33, at 196–97 (5th ed. 1984) states: "There are, however, a number of limitations which have hedged the 'emergency' rule. *It does not mean that any different standard is to be applied in the emergency. The conduct required is still that of a reasonable person under the circumstances*, as they would appear to one who was using proper care, and the emergency is to be considered only as one of the circumstances." (Emphasis added; footnote omitted.)

of sudden emergency cannot be regarded as something apart from and unrelated to the fundamental rule that everyone is under a duty to exercise ordinary care under the circumstances to avoid injury to others. A claim of emergency is but a denial of negligence." *Lawrence v. Deemy*, 461 P.2d 770, 774 (1969). The emergency doctrine, as set forth in Wis JI—Civil 1105A, is simply a restatement of the ordinary prudent person standard of conduct.[2]

Harper, James & Gray, *The Law of Torts*, § 16.11 (2d ed. 1986) states: "**Conduct in emergencies.** If a person is caught in a sudden emergency, that is part of the circumstances in the light of which the person's conduct at that time is to be judged."

Restatement (Second) of Torts § 296 cmt. b (1965), discussing the standard of conduct in an emergency, states in part,

> The law does not require of the actor more than it is reasonable to expect of him under the circumstances which surround him. Therefore, the court and jury in determining the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that his choice is unfortunate does not make it improper.even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action.

[2] Wis JI—Civil 1105A:

> When considering negligence as to management and control bear in mind that a driver may suddenly be confronted by an emergency, not brought about or contributed to by her or his own negligence. If that happens and the driver is compelled to act instantly to avoid collision, the driver is not negligent if he or she makes such a choice of action or inaction as an ordinarily prudent person might make if placed in the same position. This is so even if it later appears that her or his choice was not the best or safest course.

> This rule does not apply to any person whose negligence wholly or in part created the emergency. A person is not entitled to the benefit of this emergency rule unless he or she is without fault in the creation of the emergency.

¶ 58. Over 30 years ago Professor Campbell questioned whether a rule of marginal value was worth the time, energy, and expense it absorbed. Professor Richard V. Campbell, *Recent Developments of Tort Law in Wisconsin*, Institute of Continuing Legal Education, CLEW, pp. 34–37 (1969). Professor Campbell pointed out that the emergency doctrine has been a substantial issue in many appeals, a fact that raises questions about the doctrine's utility in clarifying the law. *Id.* at 35. He also questioned whether the doctrine was helpful to judges. Why does a judge need a special doctrine regarding negligence as to management and control in an emergency? Professor Campbell thought a judge's "usual control over sufficiency of the evidence gives him adequate power." *Id.* at 36. In addition, Professor Campbell noted that problems associated with the emergency doctrine may, in a given case, overwhelm and obscure important substantive issues. To illustrate this point, Professor Campbell cited an opinion of this court that spent several pages discussing an emergency instruction that was erroneously given by the circuit court, while only a few sentences addressed the key negligence issue in the case. *Id.* at 36 (citing *Menge v. State Farm*, 41 Wis. 2d 578, 164 N.W.2d 495 (1969)).

¶ 59. Professor Campbell has not been alone in finding the emergency doctrine a source of concern. "Despite the basic logic and simplicity of the sudden emergency doctrine, it is all too frequently misapplied on the facts or misstated in jury instructions." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 33, p. 197 (5th ed. 1984) (footnote omitted) [hereinafter "Keeton, *Law of Torts*"]. Many courts are concluding that: abolishing the emergency doctrine is

This emergency rule is to be considered by you only with respect to your consideration of negligence as to management and control.

warranted because it is potentially confusing; the standard jury instruction in a negligence action is sufficient; and all the circumstances, including those giving rise to an "emergency," remain available for counsel to argue to the fact finder. Jeffrey F. Ghent, J.D., *Modern Status of Sudden Emergency Doctrine*, 10 A.L.R. 5th 680 (1993).

¶ 60.    The Mississippi Supreme Court identified two of the central criticisms of the doctrine. First, even a well-drafted instruction can create confusion as to whether in an emergency the reasonable person standard applies, or some other standard. "The hazard of relying on the doctrine of 'sudden emergency' is the tendency to elevate its principles above what is required to be proven in a negligence action." *Knapp v. Stanford*, 392 So. 2d 196, 198 (Miss. 1980). Second, the court noted that the emergency instruction tended to confuse the principle of comparative negligence. *Id.* The Mississippi court concluded, "the orderly disposal of negligence cases would be best served by applying uniform principles of negligence under all circumstances." *Id.* at 199.

¶ 61.    The Hawaii Supreme Court also observed that it "would be foolhardy to jeopardize the outcome of trial by giving an instruction adding little to the basic jury charge that must be given in any negligence action." *DiCenzo v. Izawa*, 723 P.2d 171, 181 (Haw. 1986). The court stated that the risk of prejudicial error in giving the emergency instruction exceeds the possibility of error in not doing so, and the instruction therefore should be withheld. The court stated that the circumstances purportedly constituting an emergency are proper matters for argument by counsel to the jury because "the conduct in question must always be con-

sidered in the light of all the surrounding circumstances." *Id.*

¶ 62. Similarly, the Supreme Court of New Mexico held that the jury instruction on sudden emergency should no longer be used in negligence cases. *Dunleavy v. Miller*, 862 P.2d 1212 (N.M. 1993). The court found the instruction unnecessary because the standard of care is already adequately stated in another instruction. *Id.* at 1218. It also noted that the emergency doctrine could create confusion by overemphasizing the circumstances surrounding a party's conduct and seeming to imply that a different standard of care applies in a sudden emergency. *Id.*

¶ 63. In Wisconsin, the emergency instruction is already limited to those situations in which: the party seeking the instruction is free from negligence in the creation of the emergency; the events occur rapidly; and, the alleged negligence is related to management and control. *Edeler v. O'Brien*, 38 Wis. 2d 691, 697, 158 N.W.2d 301 (1968). Given its limited application, doubtful utility, and potential for creating confusion, use of the emergency instruction should end in this jurisdiction as well. Our negligence instruction clearly sets forth the standard of care. Wis JI—Civil 1001. Trial counsel can argue to the jury whether a party's actions under the circumstances were careless or prudent, but mistaken.[3]

---

[3] The "mistaken and yet prudent" formulation describing the emergency principle was set down by Justice Holmes while he was Chief Judge of the Massachusetts Supreme Judicial Court. *Dunleavy v. Miller*, 862 P.2d 1212, 1216 (N.M. 1993) (citing *Kane v. Worcester Consol. St. Ry.*, 65 N.E. 54, 54 (1902)).

## Negligence Per Se

¶ 64. Turning next to negligence per se, it can be concluded that use of the emergency doctrine should end here as well. Understanding why the emergency doctrine should be abolished when negligence per se is alleged requires an analysis of the relationship between statutes and torts.[4]

¶ 65. Our cases distinguish between statutory violations that give rise to negligence per se and those that give rise to "absolute liability." *D.L. v. Huebner*, 110 Wis. 2d 581, 639–40, 329 N.W.2d 890 (1983). Under the doctrine of absolute liability, if the court determines that the legislature intended to place the burden for injury entirely upon the individual who violated the statute, then liability lies simply by establishing that a party violated the statute within the time period in which the injury occurred and then by proving damages. *Id.* at 640. Under this doctrine, causation is not an issue and contributory negligence is not a defense. *Id.* A violation of child labor laws has been held to give rise to absolute liability. *Id.* Absolute liability for a statutory violation is a rarity. Keeton, *Law of Torts*, § 36, at 228.

¶ 66. On the other hand, negligence per se is "a form of ordinary negligence." *Huebner*, 110 Wis. 2d at 640. Negligence is conduct that "falls below a standard established by the law for the protection of others against unreasonable risk of harm." Keeton, *Law of*

---

[4] A discussion of the relationship between torts and statutes is found in two articles by Professor Caroline Forell: Caroline Forell, *Statutory Torts, Statutory Duty Actions, and Negligence Per Se: What's the Difference ?*, 77 Or. L. Rev. 497 (1998); Caroline Forell, *The Statutory Duty Action in Tort: A Statutory / Common Law Hybrid*, 23 Ind. L. Rev. 781 (1990).

*Torts*, § 31, at 170 (footnote omitted). The standard of conduct of an ordinary prudent person can be established through several means, including a judicial decision or legislative enactment. Restatement (Second) of Torts § 285. "This court has held that when the legislature or an administrative agency prescribes what particular acts shall or shall not be done, the statute or rule may be interpreted as establishing a standard of care, deviation from which constitutes negligence." *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 418, 312 N.W.2d 37 (1981) (internal quotation omitted); Keeton, *Law of Torts*, § 36, p. 230. Only causation, and defenses such as contributory negligence, remains to be resolved. *Huebner*, 110 Wis. 2d at 640; Keeton, *Law of Torts*, § 36, at 230.

¶ 67.   To determine if violation of a safety statute constitutes negligence per se, three elements must be satisfied:

(1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability.

*Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 66–67, 596 N.W.2d 456 (1999) (quoting *Tatur v. Solsrud*, 174 Wis. 2d 735, 743, 498 N.W.2d 232 (1993)).

¶ 68.   If a court determines that the requirements to establish negligence per se are established, then the terms of the statute set the standard of care. When it applies, the emergency doctrine functions as an excuse. *La Vallie v. General Ins. Co.*, 17 Wis. 2d 522, 527, 117 N.W.2d 703 (1962). The term "excuse" can be some-

what misleading.[5] Liability is not avoided under the emergency doctrine because a party is somehow justified in violating the statute. Liability is avoided because it is concluded that under all the circumstances the actor's conduct was that of an ordinarily prudent person. This can only occur because the emergency doctrine changes the actor's duty from compliance with the terms of the statute into that of a reasonable person confronted by all the circumstances, including the emergency. In other words, the party asserting negligence per se loses the benefit of the doctrine, which is having the element of duty established. To again echo Professor Campbell, do we really need a special doctrine for this?

¶ 69.   Rather than perpetuating a nineteenth century[6] doctrine that arguably does more to obscure justice than to bring it about, use of the sudden emergency doctrine should end when negligence per se is alleged.

¶ 70.   In its place this court should simply make a clear statement as to the respective burden that must be carried by each party when negligence per se is alleged. If a party establishes violation of a motor vehicle safety statute and the elements necessary to find negligence per se, then the burden of production should shift to the party against whom the action lies to establish that his or her conduct was that of an ordinarily prudent person under the same circumstances. If the party meets his or her burden, common law negligence

[5] *See* George P. Fletcher, *Fairness and Utility in Tort Theory*, 85 Harv. L. Rev. 537, 557–64 (1972) for a discussion of the distinction between excuse and justification.

[6] For a brief examination of the history of the emergency doctrine, see *Dunleavy v. Miller*, 862 P.2d 1212, 1215 (N.M. 1993), and the sources cited therein.

becomes a jury question. If the court concludes that this party has failed to meet his or her burden, then terms of the statute set the standard of care. Causation and contributory negligence then remain to be established. This is the standard that the Oregon Supreme Court apparently follows. In a case expressing disapproval of the emergency doctrine the Oregon court held: "When the evidence establishes that a party has violated a motor vehicle statute, such a party has the burden of producing evidence that, nevertheless, he was acting reasonably. Without such evidence the party is negligent as a matter of law." *Barnum v. Williams*, 504 P.2d 122, 126 (Or. 1972). Whether the circumstances constitute an "emergency" is irrelevant. The conduct in question is considered in light of all the surrounding circumstances.

¶ 71.   The majority's yeoman-like effort to apply current law regarding the emergency doctrine illustrates the intellectual contortions the doctrine generates. It is not enough that the applicable safety statute is identified. The statute is parsed into additional duties, only some of them involving management and control and thus amenable to application of the emergency doctrine. Majority Op. at ¶ 36–38. How can we feel assured that this contorted process will accomplish justice?

¶ 72.   As the majority notes, abolishing the emergency doctrine and adopting an alternative approach will not change the result in this case. Majority Op. at ¶ 31 n.7. That is surely no reason to continue to use a doctrine that is at its best awkward and at its worst jeopardizes justice. Therefore, although I concur in the conclusion reached by the majority in this case, I would argue that we should seize the opportunity to abolish the emergency doctrine in Wisconsin.

415

" 'That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the legislature.' "

*State v. Esser*, 16 Wis. 2d 567, 581–92, 115 N.W.2d 505 (1962) (quoting from Mr. Justice Cardozo, *The Nature of the Judicial Process, Adherence to Precedent,* 142, 150–152 (1945 ed.)).

¶ 73.   ANN WALSH BRADLEY, J. *(dissenting).* In its examination of the stop sign statute, Wis. Stat. § 346.46(1), the majority thwarts the plain meaning canon of statutory construction. Its interpretation gives the stop sign statute a plain meaning that permits excused violations based on emergency without any language supporting the imputed interpretation. Additionally, the majority errs in overlooking the law that we must apply when reviewing the circuit court's grant of a new trial in the interest of justice.

¶ 74.   The majority's interpretation is primarily accomplished not by examining the words of Wis. Stat. § 346.46(1), but by analogizing the stop sign statute to a starkly different statute. The only common thread weaving Wis. Stat. § 346.46(1) and Wis. Stat. § 346.05(1) is the classification of both as safety stat-

utes. The majority would have such statutes treated identically for all conceivable purposes. Yet, it fails to discern that by doing so, it has violated legislative intent as expressed in the clear and unequivocal wording of Wis. Stat. § 346.46(1).

¶ 75.   Not all safety statutes are of the same breed. Some provide for the excuse of negligence "conclusively determined" by their violation, while others do not. W. Page Keeton, *The Law of Torts* 230 (5th ed. 1984). The most instructive guide in determining whether an excuse exists remains the wording of the statute. The majority concedes the need to find a stated excuse in the wording of the statute and cites to the Restatement and other treatises as authority for that premise.[1] Majority Op. ¶¶ 29–31. In interpreting Wis. Stat. § 346.46(1) to permit the application of the emergency doctrine to its violation, however, the majority fails to explain the unmistakable absence of an emergency excuse from the text of the stop sign statute.

---

[1] In particular, the Restatement (Second) of Torts § 288(A) provides:

> (1)   An excused violation of a legislative enactment or an administrative regulation is not negligence.

> (2)   **Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when**

> (a)   the violation is reasonable because of the actor's incapacity;

> (b)   he neither knows nor should know of the occasion for compliance;

> (c)   he is unable after reasonable diligence or care to comply;

> (d)   he is confronted with an emergency not due to his own misconduct;

> (e)   compliance would involve a greater risk of harm to the actor or to others.

(Emphasis supplied.)

¶ 76.   Wisconsin Stat. § 346.46(1) is not amenable to the application of the emergency doctrine. The plain language provides:

> Except when directed to proceed by a traffic officer or traffic control signal, every operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection and shall yield the right-of-way to other vehicles which have entered or are approaching the intersection upon a highway which is not controlled by an official stop sign or traffic signal.

Likewise, subsections (2m)–(4) are silent as to any excused transgression, based on emergency, of the duty to stop at school crossings, railroad crossings, and temporary stop signs.

¶ 77.   In the absence of expressed words allowing an excuse in emergency situations, the plain language of Wis. Stat. § 346.46(1) must be construed not to provide such an excuse. Restatement (2d) Torts, § 288(A). *See also Ball v. District 4, Area Bd.,* 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984) (legislature presumed to have known the import of the words it has chosen). No deviation from the duty imposed by the statute may then be excused by a claim of emergency. Indeed, this court has previously interpreted the plain language of Wis. Stat. § 346.46(1) as imposing an absolute duty to obey a stop sign. *Sailing v. Wallestad,* 32 Wis. 2d 435, 441, 145 N.W.2d 725 (1966).

¶ 78.   The legislative history of the stop sign statute supports this interpretation. As originally enacted, the stop sign statute required all vehicles to "come to a full and complete stop within thirty feet of the near limits of an intersection at which has been erected an official stop sign or traffic signal." Wis. Stat. § 85.69

(1929). The text of the statute did not provide for an exception based on emergency.

¶ 79. An amendment in 1943 broadened the requirement to stop at a stop sign to include any "device" transporting persons or property upon a public highway. Ch. 152, Laws of 1943. Again, no excuse to the duty of absolute compliance was provided in the text of the statute.

¶ 80. Wisconsin Stat. § 346.46 replaced the former Section 85.69 in 1957 and added language permitting a traffic officer or traffic control signal to direct cars into intersections. § 1, ch. 260, Laws of 1957. Additionally, the revised and renumbered statute required drivers to stop either at the stop line or before entering the crosswalk, rather than providing a range of 30 feet within which to make a stop.

¶ 81. The statute intended that "a stop must *under all circumstances* be made at a point where the operator of a vehicle can efficiently observe traffic on the intersecting roadway before entering such intersecting roadway." Legislative Council Note, 1957 S.B. 99 (emphasis added). Yet again, no provision was made for an excuse based on emergency, although the emergency doctrine had become a prominent feature in the law of this state and dated back to 1915. *See Parkes v. Lindenmann*, 161 Wis. 101, 151 N.W. 787 (1915); *Siegl v. Watson*, 181 Wis. 619, 195 N.W. 867 (1923). *See also Basile v. City of Milwaukee*, 250 Wis. 35, 38, 26 N.W.2d 168 (1947) (noting that "[t]he emergency doctrine is of course well established.").

¶ 82. The majority nonetheless misinterprets the statutory language while discounting precedent in an attempt to capture the legal reasoning of *LaVallie v. General Ins. Co.*, 17 Wis. 2d 522, 117 N.W.2d 703 (1962), and apply it to the statutory violation at issue

in this case. In an expansion of the holding in *LaVallie*, the majority transposes the application of the emergency doctrine from a statute that provides for emergency exceptions to a remarkably dissimilar statute that, by its very words, does not permit the application of the doctrine.

¶ 83. The statute in *LaVallie* governing roadway position requires that the operator of a vehicle "shall drive on the right half of the roadway and in the right-hand lane of a 3-lane highway, except" when a number of excused conditions exist.[2] These excused conditions encompass emergency situations, as implied in sub. (d) and confirmed by the Wisconsin Jury Instructions. Wis JI—Civil 1135 and 1140. Although the court in *LaVallie* determined that the emergency doctrine applied to relieve a driver of negligence per se in the violation of Wis. Stat. § 346.05(1), *LaVallie* does not stand for the

---

[2] Wis. Stat. § 346.05 has remained substantially intact since it was addressed in *LaVallie* and reads in pertinent part:

(1) Upon all roadways of sufficient width the operator of a vehicle shall drive on the right half of the roadway and in the right-hand lane of a 3-lane highway, except:

(a) When making an approach for a left turn under circumstances in which the rules relating to left turns require driving on the left half of the roadway; or

(b) When overtaking and passing in circumstances in which the rules relating to overtaking and passing permit or require driving on the left half of the roadway; or

(c) When the right half of the roadway is closed to traffic while under construction or repair; or

(d) When overtaking and passing pedestrians, animals or obstructions on the right half of the roadway; or

(e) When driving in a particular lane in accordance with signs or markers designating such lane for traffic moving in a particular direction or at designated speeds; or

(f) When the roadway has been designated and posted for one-way traffic, subject, however, to the rule stated in sub. (3) relative to slow moving vehicles.

broad proposition that the emergency doctrine excuses all negligence per se, including violations of absolute statutory duties.[3]

¶ 84. As discussed, the stop sign statute does not provide for an excused violation on the basis of an emergency situation. Likewise, the jury instructions make no mention of potential excuses, emergency or otherwise. Wis JI—Civil 1325 and 1325A. Yet the majority relies upon the narrow language, "[e]xcept when directed to proceed by a traffic officer or a traffic control signal" and analogizes these two narrow circumstances to the numerous exceptions contained within Wis. Stat. § 346.05(1). Since both statutes list exceptions, the majority opines that the stop sign statute is not "immutable" and is thus subject to the emergency doctrine. Majority Op. at ¶ 33.

¶ 85. The majority fails to discern the fundamental differences in the nature of those exceptions. In essence, the narrow circumstances in Wis. Stat. § 346.46(1) permit a traffic officer or traffic signal to assume the driver's duty to efficiently observe traffic on the intersecting roadway before proceeding into the

---

[3] The *LaVallie* court also applied the emergency doctrine to excuse the violation of Wis. Stat. § 346.34(1) (1961), which read in relevant part:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway. . .or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

This statutory section has remained substantively the same and requires that the driver deviating from a direct course exercise ordinary care. Wis JI—Civil 1354. Thus, this statutory duty also differs from the absolute duty imposed by the stop sign statute.

intersection. *See Kraskey v. Johnson*, 266 Wis. 201, 207, 63 N.W.2d 112 (1954) (legislative purpose behind stop sign statute not confined to duty of stopping but also extends to duty of observation); Majority Op. at ¶ 36 (recognizing the three-tiered duty underlying Wis. Stat. § 346.46(1)).

¶ 86. The limited exceptions of Wis. Stat. § 346.46(1) do not address emergency conditions. The driver still has a duty to obey the traffic officer or control signal. In the absence of guidance from either, every driver of a vehicle shoulders the driver's own duty to stop, observe, and then proceed.

¶ 87. In contrast, one of the several exceptions listed under the statute governing roadway position specifically provides for discharge from the duty to maintain proper roadway position when the driver encounters obstacles on the road. Wis. Stat. § 346.05(1)(d). These obstacles may include emergency conditions such as an unexpected cloud of dust or a sudden mechanical failure. As the Comments to Wis JI—Civil 1135 and 1140 reveal, there are numerous emergency exceptions to a requirement of driving in the right lane or right side of the road.

¶ 88. Because of the essential distinctions between the exceptions provided under each statute, the majority is misguided in justifying the application of the emergency doctrine to the stop sign statute. Its result is in direct contravention of the plain meaning of Wis. Stat. § 346.46(1), which creates an absolute duty of compliance.

¶ 89. The majority errs in its wholesale transfer of *LaVallie*'s legal reasoning in light of the significant differences between the statutes. A better candidate for statutory comparison is the crosswalk statute presented in *Edwards v. Kohn*, 207 Wis. 381, 241 N.W.

331 (1932), which this court has interpreted as creating an absolute duty.

¶ 90.    In *Edwards*, the plaintiff was struck by a vehicle that was unable to stop due to slippery road conditions. At the time, the plaintiff was crossing an intersection within a marked crosswalk. Wisconsin Stat. § 85.44(1) governed the action and provided that "[t]he operator of any vehicle shall yield the right of way to a pedestrian crossing the highway within any marked or unmarked crosswalk at an intersection except at those intersections where the movement of traffic is being regulated by traffic officers or traffic control signals." *Id.* at 385.

¶ 91.    The *Edwards* court refused to entertain the defendant's contention that the jury should have been instructed as to whether he had acted reasonably under the circumstances in violating the statute. Instead, the court determined that the defendant had an absolute duty to yield to the plaintiff's right of way, a duty not excusable by the showing of reasonable action in the face of inclement weather conditions. *Id.*

¶ 92.    The statute at issue in *Edwards* closely parallels the stop sign statute and provides identical exceptions. Both impose an absolute duty of compliance that may not be excused by the emergency doctrine. Although the label of the emergency doctrine was not directly invoked in *Edwards*, the rationale of the doctrine is the essence of the case. The defendant proposed jury instructions seeking excuse because of the existence of slippery road conditions, and yet the court determined that he had an absolute duty to yield that was not mitigated by severe weather conditions.

¶ 93.    The majority and the concurrence suffer from the same infirmity: the failure to recognize that Wis. Stat. § 346.46(1) imposes an absolute duty to

which excuses of emergency do not apply. In its call to wholly abandon the doctrine of negligence per se and the emergency doctrine, both of which have become entrenched in the law of this state, the concurrence obscures the actual reason why the emergency doctrine serves no purpose in analyzing the statutory violation before us.

¶ 94. Essentially, the concurrence urges the adoption of a more relaxed rebuttable presumption standard for violations of safety statutes to replace negligence per se. Following the suggestion of the concurrence would mean that rather than negligence being "conclusively determined" by a statutory violation, negligence would remain only tentative until the defendant failed to meet the burden of production establishing that he or she acted reasonably under the circumstances. Concurring Op. at ¶ 70.

¶ 95. As a result, not only may courts consider emergency conditions as in this case to excuse a statutory violation, but courts may also consider a myriad of other factors and circumstances surrounding the statutory violation. *Id.* The violation of an absolute duty set forth in a safety statute warrants a stricter standard than the one contemplated by the concurrence.

¶ 96. The concurrence makes repeated references to Professor Richard Campbell to support shelving the emergency doctrine for both common law negligence and negligence per se. Yet, there is no intimation that Professor Campbell advocates the abandonment of negligence per se that would result from an adoption of the rationale of the concurrence. To the contrary, Campbell's cited text recognizes the integral role that negligence per se plays in violations of automobile safety statutes, such violations being commonplace. Campbell, *Recent Developments of Tort Law*

424

*in Wisconsin,* Institute of Continuing Legal Education, CLEW, 83–85 (1969).

¶ 97. In its approval of *Barnum v. Williams,* 504 P.2d 122 (Or. 1972), the concurrence also errs by embracing the rationale of a court that has been subject to criticism for introducing chaos into the law of negligence. *See* Caroline Forell, *Statutory Torts, Statutory Duty Actions, and Negligence Per Se: What's the Difference?,* 77 Or.L.Rev. 497 (1998). The state of confusion engendered by Oregon common law as it relates to liability for statutory violations has evoked an appeal to the legislature for clarifying guidelines to remedy the confusion. *Id.* at 532–34. By advocating the abandonment of well-established doctrines in exchange for an approach with uncertain legal vitality, the concurrence needlessly sacrifices too much.

¶ 98. In this case, after apparently applying the emergency doctrine, the jury concluded that inclement weather resulting in slippery roads created an emergency that excused the duty to stop at a stop sign. It found that neither party was negligent.

¶ 99. Yet, as between two "innocent" parties, the absolute duty imposed by the legislature necessarily breaks the tie. The plain language of the stop sign statute as supported by the legislative history allows no excuses for emergencies. In the face of an absolute duty, the legislature gives the benefit to the innocent party not violating a safety statute, while holding the violator accountable. Both the majority and the concurrence fail to apply the absolute duty expressed in Wis. Stat. § 346.46.

¶ 100. The majority's error in this case is not limited to its disregard of the absolute duty imposed by the stop sign statute but also extends to its refusal to honor the circuit court's grant of a new trial in the interest of

justice. Unlike a review of a directed verdict, in which we seek to uphold the jury's findings, on review of the grant of a new trial in the interest of justice we seek reasons to sustain the circuit court's findings and conclusions. *Krolikowski v. Chicago & N.W. Transp. Co., Inc.*, 89 Wis. 2d 573, 580, 278 N.W.2d 865 (1979).

¶ 101. . Because of the broad discretion vested in the circuit court, a reversal is warranted only in the erroneous exercise of its discretion. *Id.* If the court offers several grounds for granting a new trial in the interest of justice, only one need be reasonable or sufficient to sustain the contention that the court did not erroneously exercise its discretion. *Loomans v. Milwaukee Mut. Ins. Co.*, 38 Wis. 2d 656, 662, 158 N.W.2d 318 (1968).

¶ 102. In granting the new trial, Judge Skwierawski expressed his unequivocal opinion that the jury had erred in absolving the defendants of negligence. He ordered the trial on two distinct grounds: 1) the emergency doctrine does not apply to excuse negligence per se in the violation of the stop sign statute and 2) the emergency doctrine does not apply because the bus driver had created her own emergency. Majority Op. at ¶¶ 46–47.

¶ 103. As to the first ground, the majority's conclusion that the circuit court misapprehended the law of the emergency doctrine justifies reversal under its holding. However, Judge Skwierawski's alternate ground for granting a new trial does not warrant reversal, but rather mandates our deference.

¶ 104. The majority notes that the second ground also constitutes an erroneous exercise of the circuit court's discretion, because a reasonable jury could have concluded that the bus driver did not create her own emergency. Majority Op. at ¶ 47. In doing so, the

majority completely overlooks the law in this regard, which requires a reviewing court to look for reasons to sustain the circuit court. *Bartell v. Luedtke*, 52 Wis. 2d 372, 377, 190 N.W.2d 145 (1971).

¶ 105. Additionally, the majority avoids mentioning the court of appeals' determination that a reasonable jury may have also agreed with Judge Skwierawski in finding the bus driver negligent for creating her own emergency. *Totsky v. Riteway Bus Serv.*, 220 Wis. 2d 889, 905, 584 N.W.2d 188 (Ct. App. 1998). The court of appeals thus acknowledged the reasonable basis underlying the circuit court's conclusion.

¶ 106. The facts in this case do not present uncontroverted evidence that the driver of the bus was free of any negligence in creating her own emergency. The driver had previously skidded twice on ice, and she had been aware of the slippery road conditions. Based on her knowledge and past experience, the speed of 10 to 16 miles per hour may indeed have been excessive. The circuit court's conclusion was thus not without a reasonable basis, and its grant of a new trial in the interest of justice should be sustained. By reversing the order, however, the majority fails to afford due deference to the discretionary authority of the circuit court.

¶ 107. In sum, the majority violates the plain meaning of the stop sign statute by approving the application of the emergency doctrine. It also overlooks the deference afforded by an appellate court to a circuit court's discretion when granting a new trial in the interest of justice. Accordingly, I dissent.

¶ 108. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE DAVID T. PROSSER join this dissent.